JUDGE LINDSAY
delivered the opinion oe the court.
H. G. and Fred "Vanseggern failed in business, and pursuant to an agreement with their creditors they each made a deed of assignment to Henry T. Jefferson. These conveyances were made for the benefit of all their creditors “pro rata, or according to the rights of each creditor, no priorities or liens . . . existing to be . . . disturbed, nor any preference or advantage to any creditor to be created to the prejudice of other creditors.”
The objects of the assignments are further explained in this language: “ But the conveyance to said Henry T. Jefferson is in trust for the full, equal, and just payment of all debts and legal liabilities of H. G. (and Fred) Vanseggern, but not to create any preference or advantage to any creditor to the prejudice of other creditors; and if the property herein conveyed shall not raise a fund sufficient to pay all in full, then they áre to be paid pro rata, according to the rights of each, it not being designed by these presents to destroy or disturb any priorities or liens now existing;” and further, that said trustee “shall first pay all taxes, liens, and encumbrances on the assigned property where the value of the property exceeds such lien or encumbrance.”
*328 The German Security Bank, the Falls City Tobacco Bank, the Manufacturers’ Bank, the Central Savings Bank, and the Western German Savings Bank each hold claims against one or the other of the assignors, and each of the latter was at the date of the assignments the holder and owner of shares of stock in the bank or banks to which he is indebted. These banks claim that they have under their charters liens upon the stock so held and owned to secure the payment of their claims. The liens are created by sections in their several charters substantially as follows: “And said bank shall hold a lien on the shares of any stockholder who may be indebted to it, and such shares shall not be assigned nor transferred until the debt shall be paid or discharged.”
The question presented by this agreed case is whether, after applying the proceeds of the sales of these shares of stock to the payment of their respective demands, the banks shall for the satisfaction of the balances due them be allowed to share the general fund with the creditors having no such legal advantages.
The court below held that until the general creditors had been made proportionately equal out of the general assets in the hands of the assignee the banks should be allowed nothing further on their claims.
The deeds of assignment were not intended to change the relative rights of the various creditors. The stock of each of the two debtors was transferred to Jefferson, to be distributed among the creditors in accordance with the principles of equity recognized and acted upon by the courts of this state. It is evident that none of the parties in interest desired that their debtors should be thrown into bankruptcy, and there is nothing in the record conducing to show that any creditor expected that the estates in the hands of the assignee should be distributed in accordance with the statutory rule by which courts having jurisdiction in cases of bankruptcy are neces *329 sarily governed. No priorities or liens were to be disturbed, and hence the banks have the right to have applied to the payment of their respective claims the entire proceeds of the. stock the debtors held and owned in each bank respectively. But the conditions in the deeds providing for the preservation of these liens can not deprive the unsecured creditors of the right to insist upon an equitable distribution of the proceeds of the unencumbered property.
The assignments which were accepted by the creditors deprived them all of the right to proceed at law to collect their debts. It is not necessary therefore that we shall attempt to adjust their rights under the deeds of assignments upon the basis of the legal advantages and preferences they or either of them might have secured by superior energy and vigilance in proceedings at law.
The opportunity to secure such advantages were voluntarily surrendered by the acceptance of the deeds of assignment, and the rights of the beneficiaries must now be determined by the rules of equity prevailing in this state, unless there is some provision in the deeds inconsistent with these rules.
The preservation of existing priorities and liens is not inconsistent with these rules, nor is the requirement that the assignee shall first pay all taxes, liens, and encumbrances on the assigned property. This was to be done only in event the encumbered property exceeded in value the lien or encumbrance, and in all such cases the preservation of the liens would have rendered that course necessary and proper, independent of this special requisition.
As the debtor has the undoubted right to pay any particular debt he may select, even though he is unable to pay all his debts in full, subject only to the right of the creditors not preferred to take advantage of the act of 1856, and have his estate seized by the chancellor and settled and distributed as an insolvent estate, so may he mortgage or pledge a portion *330 of his estate to secure the payment of a particular debt, and when such pledge or security has been given it will be respected by courts of equity, except when attacked under the provisions of the act just cited. The chancellor will not in order to secure equality set aside or disregard securities obtained by contract, nor will he marshal the securities to the prejudice of the creditor holding an advantage so obtained. This is the doctrine of the case of Logan v. Anderson (18 B. Mon. 119), and of the cases of Midgely v. Slocumb (32 Howard’s Practice Rep.) and Keims’s appeal (27 Penn. Reports). The case under consideration does not come within the principle of these cases. The banks have no claim upon the stock held by the debtors on account of any agreement or contract with them. They do not hold such stock either as pledgees or mortgagees. When the loans were made to the assignors the bank exacted from each of them personal security, as they were bound to do, and their claim to the stock as an ultimate security for the payment of their debts arises not out of contract, but depends upon and must be secured through the preference given them by the law.
They insist upon this legal advantage; and having been allowed its full benefit, they deny to the unsecured creditors the right to be made equal out of the general and. unencumbered assets in the hands of the assignee. The legal advantage or preference claimed by the banks is similar to the preference allowed to partnership creditors of having their debts paid out of the partnership fund before the private creditors of either of the partners can assert their claims. In the one case the preference is given by a,statutory provision, and in the other it grows out of a well-established and inexorable rule of equity practice. It does not matter that the preference of the partnership creditors has to be worked out through the lien of one or more of the partners. It can be so worked out, and is as effectual as though it existed by virtue of posi *331 tive law. Where such preferences are claimed the unsecured creditors may demand that the assets shall be marshaled, and when the banks shall have applied the whole of the proceeds of the bank-stock to the payment of their debts equity demands that they shall be postponed until the general creditors have been indemnified out of the general and unencumbered estate, and when this is done the balance will then be distributed pari passu among all the creditors. This is the doctrine of the case of The Northern Bank of Kentucky v. Keizer (2 Duvall, 169), and the rule announced in, if not established by, that case meets with the unqualified approval of this court as now constituted.
The judgment before us for revision conforms to the principles herein indicated, and it is therefore affirmed.