CASE 13—PETITION EQUITY—APRIL 22.

# Spratt's Ex'x v. First National Bank of Richmond, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. THE MANNER OF DISTRIBUTING THE INSOLVENT ESTATE OF A DECEASED PERSON is governed by statute, which provides that when any creditor has a lien on any portion of the decedent's estate he shall not be entitled to any part of the residue until all the creditors not having liens shall have received a sum equal *pro rata* with him, and partnership estate not being excepted, the statute applies to liens thereon as well as to liens on the individual estate of the decedent, whether the lien has been acquired by operation of law or *by contract*. Therefore, the rule that creditors having liens acquired *by contract* will be allowed the full benefit of the advantage thus obtained, which applies in the distribution of the estate of an insolvent debtor who has made an assignment, does not apply in the distribution of the insolvent estate of a decedent.

2. IN THE DISTRIBUTION BETWEEN PARTNERSHIP AND INDIVIDUAL CREDITORS of an estate assigned for the benefit of creditors, the partnership creditors are entitled to a lien on the partnership estate, which can not be reached by individual creditors until all the partnership debts have been paid; but, on the other hand, the partnership creditors are not entitled to any part of the individual estate of the debtor until the individual creditors have been made equal with them. This rule, however, does not apply where a partnership creditor has acquired a lien *by contract*. The Chancellor will give to the creditor the full benefit of a lien thus acquired.

BROWN, HUMPHREY & DAVIE FOR APPELLANT.

1. In a distribution between partnership and individual creditors, of an insolvent estate, the firm creditors are not entitled to receive any thing from the individual estate until the individual creditors have received from the individual assets a per cent. equal to that which the firm creditors have received from the firm estate; and where there are two firms with a common partner and common creditors, a creditor who has received dividends from the assets of both firms can not receive a dividend from the private estate of the common partner until his private creditors have been made equal to the

*two* dividends received by the firm creditor; and *this rule* applies whether the firm creditor obtains his preference out of the firm assets by a *contract* lien or by the general equitable doctrine of the marshaling of assets as between partners. (Northern Bank of Kentucky v. Keizer, 2 Duv., 170; Weaver v. Weaver & Sibley, 46 N. H., 190; Whitehead v. Chadwell's Adm'r, 2 Duv., 432; Fayette National Bank v. Kenney, 79 Ky., 135; Black's Appeal, 8 Wright, 503; Silk v. Prime, 2 Leading Cases in Equity, 426 (note).

2. Conceding that this rule does not apply where the firm creditor has a *contract* lien upon the firm assets, in this case the creditors of the ·Daniel firm had no contract lien, but a lien secured merely by the equitable doctrine of subrogation, which is nothing more than one of the doctrines of equity jurisprudence. (Sheldon on Subrogation, sections 1, 4 and 154; German Security Bank v. Jefferson, 10 Bush.)

3. A creditor of a decedent is bound to state in his affidavit, when he files his claim, all the credits to which the claim is entitled, whether such credits came from the estate of the decedent or some other source, and he can only prove for the balance. Therefore, where the creditor had others bound to him from whom he has received a portion of his debt, he can prove only the balance after deducting such credits.

GOODLOE & ROBERTS FOR APPELLEES.

1. The firm creditors have the right to go against their debtor's individual estate with their claims undiminished by the dividends received from the assets of either of the firms of which their debtor was a member. Provided, however, they are not allowed to receive dividends on their claims from the individual estate of the debtor until his individual creditors have received therefrom a sum equal to the amount which the firm creditors have received from the *common debtor's share of the partnership estate.* (Logan v. Anderson, &c., 18 B. M., 92; Citizens' Bank of Paris v. Patterson, 78 Ky., 291; Northern Bank of Kentucky v. Keizer, 2 Duv., 169.)

2. Under this rule the individual creditors are not entitled to first receive out of the individual estate as much as firm creditors have received from firm assets, but only as much as *their debtor's portion* of the firm assets received by firm creditors. (Northern Bank of Kentucky v. Keizer, 2 Duv., 169; Bell's Ex'rs v. Newman, Adm'r, &c., 5 Sergt. & Rawle (Pa.), 78.)

3. The lien of the holders of the "Daniel paper" is a *contract* lien, and not merely a lien acquired through the doctrine of equitable subrogation, and the Chancellor will not, in order to secure equal- ·

ity, set aside or disregard a security thus obtained. (German Security Bank v. Jefferson, 10 Bush, 326; Logan v. Anderson, 18 B. M.; Midgely v. Slocumb, 32 Howard's Practice Reports; Keene's Appeal, 27 Pa. R.)

4. Where a debt secured by lien is assigned, the lien passes with the debt. (McClanahan v. Chambers, 1 Mon., 44; Eubank v. Porter, 5 Mon., 287; Edwards v. Bohannon, 2 Dana, 99; Miles v. Gray, 4 B. M., 417; Honore v. Bakewell, 6 B. Mon., 71; Forwood v. Dehoney, 5 Bush, 174; Duncan v. Louisville, 13 Bush, 378; 14 Jones, 44; 6 Cal., 134; 32 Ill.; U. S. Digest, volume 9, title Mortgages, 354; Smith's Leading Cases.)

W. O. & J. L. DODD for appellee WESTERN FINANCIAL CORPORATION.

1. The Chancellor will not, in order to secure equality, set aside or disregard securities *obtained by contract.* (Logan v. Anderson, 18 B. M., 114; German Security Bank v. Jefferson, 10 Bush, 330.)

2. The appellees did not acquire their lien by subrogation merely, but by privity of contract. The assignment of the debt carried with it the security. (Duncan v. Louisville, 13 Bush. 378; Jones on Pledges, section 419; Van Emen v. Stinchfield, 13 Minn., 75.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant, executrix of G. Spratt, deceased, brought this action under chapter 3, title 10, Civil Code, for the settlement of his estate.

At the time of his death G. Spratt, together with Charles Bridges, W. H. Bridges, and J. P. Thompson composed the firm of G. Spratt & Co., tobacco warehousemen, in the city of Louisville.

He had also, with Charles Bridges and one R. J. Daniel, entered into certain partnership ventures for the purchase and sale of tobacco, which were distinct from the business of G. Spratt & Co. But by an agreement between the two firms the money with which the tobacco was purchased and paid for was obtained on drafts drawn by G. Spratt & Co. and accepted by Daniel, which, together with charges for

storage, etc., and commissions for selling, were to be paid off out of the proceeds of the tobacco when sold by G. Spratt & Co.—it, as purchased, being consigned for that purpose.

Soon after the death of G. Spratt, the surviving members of the firm of G. Spratt & Co. made an assignment for the benefit of its creditors, who subsequently received of the entire assets only twenty-three per cent. of the amount of their debts.

The firm of Spratt, Bridges & Daniel had stored in the warehouse of G. Spratt & Co. a large quantity of tobacco under the contract referred to; but the proceeds thereof, which were the only available assets, paid only about thirty-eight per cent. of the amount of outstanding drafts used in purchasing it.

The private estate of G. Spratt seems to be sufficient to pay all his individual debts, but is insufficient to pay both them and the debts of the two firms of which he was a member. And as it does not appear that any of the other members of either firm have paid anything, a question has arisen, which is the principal one before us, whether appellees, the Banks, that discounted the drafts mentioned, and consequently creditors of both firms, shall be required to account for the dividends received by them from those firms, or from either of them, before sharing in the *pro rata* distribution of the private estate.

The Chancellor adjudged, that as between the individual creditors of G. Spratt and the creditors of G. Spratt & Co., the latter should not participate in the distribution of the private estate until the

former had been paid therefrom a proportion of their debts equal to the twenty-three per cent. dividends paid out of the assets of G. Spratt & Co.; but that those who had received dividends from the assets of Spratt, Bridges & Daniel should, without regard thereto, receive their *pro rata* share from the private estate, first accounting only for the twenty-three per cent. received from G. Spratt & Co.

The executrix, who appeals, contends that the Chancellor erred in not requiring those who received dividends of thirty-eight per cent. from Spratt, Bridges & Daniel to account therefor; while, on the cross-appeal, a reversal is asked upon the ground that the creditors of G. Spratt & Co. should be required to account only for such fractional parts of dividends received by them respectively as the share of G. Spratt in the partnership estate yielded, and no more.

The rule applicable to the distribution between partnership and individual creditors of an estate assigned by the debtor in trust for the benefit of his creditors is stated in the case of the Northern Bank of Kentucky v. Keizer,. 2 Duvall, 169, and has since been adhered to by this court.

That rule is, that as each partner has an implied lien on the partnership property for the payment of partnership debts, each partnership creditor is, on the equitable principle of subrogation, entitled to the same lien or priority, and no individual creditor of any partner can make his debtor's interest in the partnership estate available, until all partnership debts shall have been paid. But, on the other hand,

the principle of equality and the equitable doctrine of marshaling assets, entitle the individual creditors to say to the partnership creditors, "you have kept us out of the partnership effects, and we have a compensatory right to be indemnified out of the separate property of our individual debtors."

And in the case of Whitehead v. Chadwell's Adm'r, 2 Duvall, 432, where the same question arose, the court said: "The firm creditors having, through the equities of each partner, an exclusive lien on firm assets, they should not be allowed to participate in the individual assets until the individual creditors are put on an equal and exact footing with them."

The same rule was approved in German Security Bank v. Jefferson, 10 Bush, 326, and other later cases.

The ground upon which the Chancellor exempted from the operation of that rule those creditors who had received dividends from the proceeds of the tobacco of Spratt, Bridges & Daniel, is, that the firm of G. Spratt & Co. had acquired by contract a lien to indemnify them for the payment of the drafts used in the purchase of it, which lien enured to the benefit of the creditors of that firm who had discounted the drafts.

This ruling of the Chancellor is sustained by the cases of Logan v. Anderson, 18 B. M., 119; German Security Bank v. Jefferson, and other cases decided by this court.

If, therefore, this was a case in which was involved an inquiry as to the proper manner of making distribution among individual and firm creditors

of the estate of an insolvent debtor who had made an assignment, or if it was even the case of a fraudulent conveyance or transfer that by law operates as an assignment for the benefit of creditors, the judgment of the Chancellor would, in our opinion, be proper, because in accordance with the well-settled doctrine of this court applicable in such cases.

But this is a case involving a settlement of the estate of a deceased person which is insufficient to pay all debts against it, and we think the manner of distributing it is fully provided by statute, which must govern.

We quote so much of the following sections of article 2, chapter 39, General Statutes, as apply:

By section 33, it is provided that if the personal estate of a decedent be not sufficient to pay his liabilities, then the burial expenses of such decedent, and costs and charges of the administration of his estate, and the amount of certain trust estates mentioned that may be remaining in his hands, shall be paid in full before any *pro rata* distribution shall be made. "All other debts and liabilities shall be of equal dignity, and paid ratably in the administration of his estate; and should more than the ratable share of any debt be paid, his personal representative shall only receive credit for its proper proportion."

Section 34 is as follows: "When such an estate is covered by liens, giving a creditor a priority on such property, the proceeds thereof shall be first applied to the discharge of such lien, and the residue shall be subject to a *pro rata* division among

the other creditors. But when any creditor has a lien and the property subject to the lien is not sufficient to discharge the debt, he shall not be entitled to any portion of the residue of the estate, until all the creditors not having liens shall have received a sum equal *pro rata* with such lien creditor."

By section 33 it is in terms provided, that all other debts and liabilities, except those therein specified, shall be of equal dignity and paid ratably in the administration of the estate, while the language of section 34, it seems to us, comprehends every lien, however created or existing, by which one creditor of the decedent may have a legal or equitable advantage or preference over others as to any part of the estate that would otherwise be subject to the payment of all debts alike. And as partnership estate of a decedent is not excepted, we must conclude the statute was intended to apply to liens thereon, as well as to liens on the private estate of the decedent, whether the creditor be entitled to such lien on the equitable principle of subrogation, or has acquired it by contract.

In plain terms, the statute provides that when any creditor, whether individual or partnership creditor, has a lien on *any* portion of a decedent's estate, he shall not be entitled to any part of the residue until all the other creditors, not having liens, shall have received a sum equal *pro rata* with such lien creditor.

In harmony with this manifest intent of the Legislature, subsequent sections of the same article require that all demands against .the estate of a decedent

shall be verified by the written affidavit of the claimant, showing that the demand is just, and if any part of it has been paid, or there be any offset or discount against the same, the affidavit shall state the date and amount of such payment, offset and discount.

And section 41 provides, that "no personal representative shall pay, or be adjudged to pay any more of any demand against a decedent's estate than what remains due of the same after the usury embraced therein and the payments made thereon, and the offsets and discounts against the same are deducted."

When the provisions requiring the affidavit and proof of demands against a decedent's estate are considered in connection with the explicit and unambiguous language of section 41 just quoted, it is clear that, under the statute, the amount of a creditor's demand, whether he be a partnership or individual creditor, which may be paid out of such estate, is the sum actually due after deducting all payments, in whatever manner or on whatever account they may have been previously paid, and all offsets, discount and usury. And this being so, it seems to follow necessarily, that in the settlement of the private estate of a decedent which is insolvent, the ratable portion of no greater sum should be paid to any creditor.

None of the cases referred to fixing the rule by which insolvent estates are to be distributed between partnership and individual creditors, relate to estates of decedents except Whitehead v. Chadwell's Adm'r, and even in that case, though the views announced

lead to the same conclusion we have arrived at, no special reference was made to the statute on the subject.

But we are satisfied that the settlement of estates of decedents was intended to be regulated by chapter 39, General Statutes, and that no other construction can be given to the statute than we here give.

In our opinion, therefore, the Chancellor erred in failing to require appellees to account for the thirty-eight per cent. of their debts received from the proceeds of the tobacco of Spratt, Bridges & Daniel, as well as the twenty-three per cent. received from G. Spratt & Co., before receiving any part of the private estate of G. Spratt, and also erred in permitting any creditor to participate in the *pro rata* distribution, except to the extent of the actual amount due him after making the deductions of payments, offsets, discounts and usury required by statute.

Wherefore the judgment is reversed on the appeal, affirmed on the cross-appeal, and cause remanded for further proceedings consistent with this opinion.