GEORGE P. BUTTLER

v.

COMMONWEALTH TOBACCO COMPANY.

[Decided July 2d, 1907.]

1. Where the assets of an insolvent corporation are not sufficient to satisfy its debts, a creditor holding collateral insufficient to pay his entire claim is entitled to treat the same as security for the entire claim and to receive dividends out of the assets on the entire amount due at the time the corporation was declared insolvent, and not only on the balance remaining after deducting the value of the collateral.

2. Corporation act, section 86 (P. L. 1896 p. 304), providing that creditors of an insolvent corporation shall be paid proportionately to the amount of their respective debts, excepting mortgage and judgment creditors, when the judgment has not been by confession or for the purpose of preferring creditors, does not require the surrender of collateral by a secured creditor as a condition to his right to dividends on the whole amount of his claim.

On appeal from determination of the receiver.

*Mr. Maximilian T. Rosenberg* and *Mr. Ryall Victor* (of the New York bar), for the appellant.

*Mr. Robert H. McCarter,* attorney-general, for the receiver.

BERGEN, V. C.

The defendant corporation was adjudged insolvent and Jerome Taylor appointed its receiver, October 17th, 1904, on which date the company owed the Consolidated National Bank of New York $53,440.18, to secure the payment of which it held as collateral security, pledged to it by the debtor, warehouse receipts for tobacco in storage.

An order made in the cause required all creditors to make proof of their respective claims before the receiver not later than March 9th, 1905, and the appellant, on March 5th, 1905, presented its claim for the full amount of the indebtedness as it stood on the day the defendant corporation was decreed to be insolvent, and a receiver appointed. The claim disclosed that after insolvency, and before the claim was presented, $21,020.24 has been realized from a portion of the collateral. Three dividends have been declared by the receiver, one of seven per cent., April 11th, 1905, another of three per cent., June 6th, 1905, calculated upon the balance due this appellant after deducting the amount realized from the collateral. Between the date of the second dividend and the declaration of the third, August 9th, 1906, the appellant had realized from the collateral the further sum of $16,416.53, the aggregate of receipts from the collateral being $37,436.77, leaving a deficit of $16,003.41, upon which latter sum the receiver based his calculation in ascertaining the amount to be due to the appellant on account of the third dividend. The appellant protests against this method of distribution, insisting that its dividend should be based upon the total amount of its debt on the day insolvency was decreed, claiming that the collateral was given to secure, not a portion, but the whole of the debt, and that it is entitled to withhold the application of its collateral until the general as-

sets of the corporation have been exhausted. The question thus presented is whether a creditor of an insolvent corporation, holding a collateral for the payment of its debt, is required to exhaust its collateral and accept a dividend from the assets of its insolvent debtor, based upon the balance due at the time the dividend is declared, or entitled to a dividend upon its whole claim as it existed at the date of insolvency, without deduction for the amount it may receive by a voluntary, or enforced liquidation of the collateral, subject to the right of the receiver to be subrogated to such collateral as may remain after full satisfaction of the debt.

This question has been carefully considered and passed upon by the federal courts of this country, and the rule has been established there, that a creditor, proving its debt against an insolvent estate, is entitled to dividends thereon without being subject to any deduction for the proceeds of any collateral held as security therefor, received after the date of adjudicated insolvency.

In the well-considered case of *Chemical National Bank* v. *Armstrong, 59 Fed. Rep. 372,* Judge Taft carefully reviews the whole subject, holding that the rule in bankruptcy which required a creditor, if he would prove his claim in full, to surrender his collateral, was not the rule in equity, because it ignored the rights belonging to secured creditors before bankruptcy, and modified and reduced the advantage over unsecured creditors which, by the original contract of pledge, the debtor had intended to secure to him, and that it was well settled that the holding of collateral does not prevent a creditor from enforcing his claim, before insolvency, in the ordinary way by judgment and execution, without any deduction for the collateral, while after insolvency the right to satisfy his judgment by execution is gone, and for it substituted a fixed and definite interest in the assets, as a security for the payment of his debt, and that there was no reason why this did not apply as well to creditors who hold collateral as to those who are unsecured, and that the rule in equity requiring a creditor, with two funds as security, one of which he shares with others, to ex-

haust his sole security first, has no application when its operation would prevent the creditor from paying his whole claim.

This case was cited with approval in *Merrill* v. *National Bank, 173 U. S. 131.* Chief-Justice Fuller, reading the opinion of the court, said: "We concur with that court in the proposition that the assets of an insolvent debtor are held under insolvency proceedings in trust for the benefit of all his creditors, and that a creditor, on proof of his claim, acquires a vested interest in the trust fund." And in another part of the opinion: "The fourth rule is that ordinarily laid down by the chancery courts, to the effect that, as the trust created by the transfer of the assets by operation of law or otherwise, is a trust for all creditors, no creditor can equitably be compelled to surrender any other vested right he has in the assets of his debtor in order to obtain his vested right under the trust. It is true that, in equity, a creditor having a lien upon two funds may be required to exhaust one of them in aid of creditors, who can only resort to the other; but this will not be done when it trenches on the rights, or operates to the prejudice of the party entitled to the double fund. And it is well established that in marshaling assets, as respects creditors, no part of his security can be taken from a secured creditor, until he is completely satisfied."

In *People* v. *Remington, 121 N. Y. 328,* Judge Gray, speaking for the court of appeals, concludes a very interesting opinion on this question, as follows: "In this country, we find that rule more generally prevailing which allows the creditor holding securities to prove and receive his dividend on the whole debt."

A careful examination of the decision in England and the United States cannot fail to convince that the rule is almost universally established, that in the administration of an insolvent estate, by a court of equity, a creditor may prove, and is entitled to a dividend on, his whole debt, notwithstanding he may be holding collateral as an additional security therefor. One of the cases often cited in support of a contrary rule is *Amory* v. *Francis, 16 Mass. 308,* but the ruling in this case was largely rested upon the authority of *Greenwood* v. *Taylor, 1 Russ. & M. 185,* a case long since overruled by the English

courts, and not now considered as authority there. Referring to the Massachusetts case, Chief-Justice Fuller, in *Merrill* v. *National Bank, supra,* said: "We cannot concur in the view expressed by Chief-Justice Parker in *Amory* v. *Francis, supra,* that 'the property pledged is, in fact, security for no more of the debt than its value will amount to, and for all the rest the creditor relies upon the personal credit of his debtor, in the same manner he would for the whole if no security were taken.' We think the collateral is security for the whole debt, and every part of it, and is as applicable to any balance that remains after payment from other sources as to the original amount due, and that the assumption is unreasonable that the creditor does not rely on the responsibility of his debtor according to his promise."

Therefore, unless the principle approved by the English, and generally by the federal and other courts of the United States, is in conflict with the determination of the precise question by the court of last resort in New Jersey, or affected by statutory enactment, we should, in the interest of a consistent administration of the law, endeavor to follow them, for it would be unseemly to have the administration of the assets of one of our corporations administered by the federal court in the district of New Jersey, upon one principle, and by the courts of New Jersey upon another.

The earliest case in this state where this question has been considered is that of *State Bank* v. *Receiver of Bank of New Brunswick, 3 N. J. Eq. (2 Gr. Ch.) 266.* In that case the New Brunswick bank was declared insolvent prior to which the State bank received, in the regular course of business, and then held, bank bills of the defaulting corporation for $3,097, and as collateral security for the payment of them, two drafts of $1,000 each, which matured and were paid about two months after the insolvency. The State bank presented claims to the receiver for the full amount of $3,097, claiming a right to a dividend on that sum, which the receiver refused to admit. It appeared that one of the drafts had been specifically pledged for $900 of the bills, being all that was in the hands of the State bank when the pledge was made. This, it was determined, could only be

14

applied to the redemption of the particular debt for which it was pledged; that position was not contested, but it was insisted that $100, the difference between the amount of the draft and the debt for which it was pledged, should be set off against the balance of the debt, and in passing upon this question, the chancellor inclined to the opinion that it should be allowed— *first,* because, in his opinion, the act partook largely of the character of a bankrupt law, and that if the act be so considered, the claim to a set-off would be admissible; and *second,* that the act to prevent frauds by incorporated companies did not confine itself to legal set-offs, but referred to just set-offs, and "expressly directs the receivers to allow them when they ought to be allowed according to law not only, but equity also." The next question the chancellor stated as follows: "It remains to inquire whether the petitioners are entitled to prove their debt for the whole amount, after deducting the $900, and the set-off of $100, and obtain a dividend on the whole, reserving the second draft of $1,000 to make up the deficiency; or whether they shall appropriate the draft to the payment of so much of the debt first, and prove for the balance." He held that the creditor could only prove for the balance, that this would be the course under the bankrupt laws, because the principle running through that system was "that equality is equity," but it is quite apparent that the learned chancellor did not rest his conclusion upon the practice under the bankrupt laws, for he then proceeds to demonstrate that "the same principle has been applied to cases of insolvency, where the funds are under the control of a court of equity for the benefit of all creditors," and after quoting from *Greenwood* v. *Taylor, supra,* as follows: "The rule in bankruptcy must be applied here, and the mortgagee cannot be permitted to prove for the full amount of his debt, but only for so much as the mortgaged estate will not extend to pay. This rule is not founded upon the peculiar jurisdiction in bankruptcy,.but rests upon the general principles of a court of equity in the administration of assets. The mortgagee who has two funds, as against the other specialty creditors, who have but one fund, must resort, first, to the mortgage security, and can claim against the common fund only what

the mortgaged estate is deficient to pay," he then proceeds to say: "If this principle be correctly applied to the administration of insolvent estates in equity, there is an end of the question. The security must first be applied to the payment of the claim, and then the common fund be resorted to for the balance. The justice of the rule has been so strongly felt that it has been recognized and adopted even in a court of law, as in the case of *Amory* v. *Francis, 16 Mass. 308.*" Thus it appears that the chancellor rested his determination, first, upon *Greenwood* v. *Taylor, supra,* which has since been overruled in England, and upon the *Massachusetts Case* cited, which is not recognized an authority for the rule applied, and certainly the *dictum,* "for the property pledged is in fact security for no more of the debt than its value will amount to," is no longer esteemed to be a correct statement of the law, for the security is a pledge for the whole debt, and not only to the extent of its value, for it is well settled that in order to take up a pledge, the whole debt for which it is given must be tendered, and not only the value of the security. In the present condition of the law, I am of the opinion that this case, based as it was upon discredited cases, ought not to be considered a controlling authority.

In *Vander Veer* v. *Conover et al., 16 N. J. Law (1 Harr.) 487,* Chief-Justice Hornblower, speaking of the situation of a judgment creditor, who had proved his claim under general assignment proceedings, said: "If, therefore, the plaintiff in this case, apprehending that the property actually bound by his judgment or execution, might not be sufficient to satisfy him, thought proper to come in under the assignment, he had a right to do so. By doing so, he did not waive his priority as a judgment creditor, so far as respected the property bound by the judgment or execution, but he became entitled to a dividend. upon any balance that might remain due to him, after exhausting that property; and consequently by the very terms of the statute, barred himself from ever proceeding by suit at law, or, in equity against the defendant, for such balance of his debt." But whatever may have been intended by the learned chief-justice, when he said that the judgment creditor was entitled

to a dividend upon any balance remaining, it is quite clear that the expression was *obiter*, because it was not necessary to the determination of that case, for the judgment creditor, with several other execution creditors, had consented to the sale of the debtors' property, real and personal, and the applying of the proceeds to the satisfaction of the several judgments in their order of priority, and the surplus *pro rata* among the creditors who should come in under the assignment. The particular creditor, whose claim was under consideration by the chief-justice, had presented his claim to the assignees for the balance remaining due, and not for his whole debt, therefore, this case is not an authority supporting the principle upon which the receiver acted in the matter now under consideration.

*Moses* v. *Thomas, 26 N. J. Law (2 Dutch.) 124,* a case sometimes cited in support of the claim that a debtor may only have dividends after exhausting his collateral, is not the point, for there the claim filed with the assignee was for the balance due only, and the question was not presented for determination.

The case most often cited on this subject is that of *Bell* v. *Fleming's Executors, 12 N. J. Eq. (1 Beas.) 13,* but in that case the issue to be determined was the effect upon the rights of a creditor, proving his mortgage debt under an assignment for the equal benefit of creditors. The question whether the secured creditor was entitled to a dividend upon his whole debt, or only upon that part which remained unpaid after his security was exhausted, was not seriously argued, for the chancellor, in his opinion, states "that it was conceded by counsel on both sides, that the creditor was entitled to a dividend upon any balance," and then proceeds: "This, certainly, is the most unfavorable position in which the mortgagee can be placed. It cannot be contended that because a creditor has a mortgage, or other security, for his debt, he is thereby deprived of all benefit under the assignment, or that he must abandon his security, and throw it into *hotch potch*. The only question that has ever been raised, as to the rights of the mortgagee in reference to his interest in the assigned property, has been whether he could obtain a dividend upon his whole debt and look to his security for the balance, or whether the security must be first appropriated, and the

creditor be entitled to a dividend only upon any deficiency." He then refers to the case of *Greenwood* v. *Taylor,* of which he says: "Yet it is perfectly manifest that so far from the principle being illustrated by this case, that the case was decided in violation of the rule, for the rights of the mortgagee were trenched upon, and he was prejudiced by its application." A careful reading of this case discloses that the real question raised in the present proceeding was not at issue, and everything which the case contains relating to the amount upon which a creditor with collateral is entitled to a dividend, was merely incidental, and the only question necessarily determined on this branch of the case was whether the creditor, having proved his debt for which he held a mortgage as security, thereby lost the benefit of the security, and the difficulty suggested by the chancellor, at the close of his opinion with regard to adjusting the claim of a mortgage creditor, is a mere suggestion of possible methods to be pursued, but not the announcement of any equitable principle.

The case last referred to came before our court of errors and appeals, and is reported in *12 N. J. Eq. (1 Beas.) 490,* and Chief-Justice Green, in delivering the opinion of that court, said: "But admitting the provisions to bear a different construction, has the creditor demanded a dividend upon its mortgage debt so as to subject him to the loss of his security? The statute expressly provides for the priority of mortgage debts (section 1). It authorizes the assignee to redeem all mortgages and conditional contracts. The assignment does not impair the mortgage security. It is well settled at this day that the mortgage creditor is entitled to have the mortgage debt first satisfied out of the proceeds of the sale of the mortgaged premises, and if that prove insufficient, he is entitled to come in as a general creditor for a dividend upon the balance. But, unfortunately, the statute has provided no mode in which that object shall be accomplished, unless the assignees see fit to redeem the mortgage. The creditor is required to present his security within a limited time—too soon to allow him to foreclose the mortgage and ascertain the value of the security. He may not sell the security, as may be done under the English Bankrupt law. He cannot safely deduct the amount of the mortgage debts from his claim, for the value

of his security may be doubtful and may prove worthless. The best and safest, if not the only course, so far as I am aware, that the creditor can adopt, is the very one pursued by the creditor in the present instance, to present his entire claim to the assignees, specifying the extent and nature of his security. The claim is thus placed in the hands of the assignees, to have the right settled agreeably to law. Whether he is entitled to a dividend upon his whole debt, and to have the mortgage applied to the satisfaction of the deficiency, or whether he can only claim a dividend on the balance after exhausting the security, he virtually asks that his rights be protected."

It seems to me quite clear that the court of errors and appeals, in determining the question before it, as it is said in *Bish. Insolv. Dr. (3d ed.) 533,* "Left the question open." It was not necessary to determine the amount upon which the dividend of a creditor holding a collateral should be based, the matter under consideration being whether a creditor holding a mortgage as collateral to his debt released it because he came in and exhibited his claim for a dividend out of the assets of his debtor who had made an assignment thereof for the general benefit of his creditors, and all that was said by the court regarding the question now under consideration was not necessary to the determination of the question then presented, the judgment of the court being "the mortgage security is neither discharged by the mode in which the claim was presented, nor by the will of the testator." I find nothing in this case establishing a principle regarding the right of a secured creditor of an insolvent debtor to a dividend, without crediting a collateral, differing from that which appeals to the judgment and reason of the great majority of the judges of courts, entitled to the most respectful consideration, and whose opinions establish that judicial authority upon which we may safely rest.

In the case of *Whittaker* v. *Amwell National Bank, 52 N. J. Eq. (7 Dick.) 400,* Vice-Chancellor Bird expressed the opinion, that while creditors with collateral might prove their debts for the whole amount due without releasing their collateral, they were only entitled, as against general creditors, to a dividend upon the balance remaining due after having received the value

of the collateral, citing in support thereof the cases I have above referred to, and which, in my judgment, afford no support for the doctrine announced, which the vice-chancellor said proceeded, "upon the old and long-established principle that where one creditor has two securities and others only one, the former must exhaust his claim to that which is entirely his own before he can resort to that which they hold in common," but in applying the principle which he thus invokes he did not observe that the doctrine of marshaling assets will never be applied, as was said by Chancellor Williamson in *Bell* v. *Fleming's Executors, supra,* when it will trench upon the rights or operate to the prejudice of the party entitled to the double fund. The collateral is for the purpose of protecting the whole debt, not a part only, and to deprive the creditor of the full advantage of his collateral, trenches on his rights.

The rule, as I understand it to be, is that if the assets of the debtor are not sufficient to satisfy all of his debts, a creditor having a right to resort to a fund open to himself alone will not be prevented from claiming, from the assets of his debtor, a dividend on the full amount of his debt, and while the total received cannot exceed the sum due, he is not limited to a dividend on the balance remaining after deducting the value of the collateral, and that marshaling will not be enforced against him if any part of his debt remains unsatisfied. The security is for his whole debt and not for a part of it, and he cannot be required to surrender it until the whole debt is liquidated. If, after receiving his dividend, the proceeds of his collateral exceed the amount due, the general creditors are entitled, by subrogation, to the unapplied collateral.

The only other question to be considered is whether section 86 of our Corporation act (*P. L. 1896 p. 304*) is in the nature of bankruptcy proceedings subjecting creditors to the rules applied in that court. My conclusion is that it is not, for the dissolution of a corporation and the distribution of its assets are, by the act, committed to the jurisdiction of the court of chancery, whose powers are equitable, and we must assume that the legislature intended the distribution of the assets of an insolvent corporation, according to equitable rules as distinguished from proceedings in

a bankrupt court, where the powers conferred and the methods to be pursued are the creation of a special statute for that purpose. Our act requires that "the creditors shall be paid proportionately to the amount of their respective debts, excepting mortgage and judgment creditors, when the judgment has not been by confession or for the purpose of preferring creditors," and it does not prevent the holding of collateral, nor require its surrender, but places all creditors on the same level as to the amount of their respective debts, and there is nothing in the legislative language which in any way interferes with the right of the creditor to be paid a dividend upon the amount of his debt as it existed when the insolvency was adjudged.

Admitting that the course of judicial action in the past, in this state, may not have been so clear and distinct upon the question presented as to leave our minds entirely free from doubt, it nevertheless appears to me that the rule now generally adopted and followed by other jurisdictions, that the creditor of an insolvent corporation may prove and receive a dividend upon his whole debt, as it existed when the insolvency was declared, without regard to the amount and value of the collateral held by him, has not been so decidedly repudiated by our courts as to prevent us from following it, if harmonious judicial action be wise and desirable, and that it is so I have no doubt. Many corporations have come into existence under the laws of this state, and the distribution of their assets among creditors is administered by the federal courts of this district as well as by the court of chancery, and it appears to me that to have two courts with concurrent jurisdiction sitting in the same city, administering the assets of our insolvent corporations, according to different principles, is unwise, and to be avoided if possible. If by adopting the rule laid down by the supreme court of the United States, which is necessarily to be followed by all inferior federal courts, we are required to abandon, to some degree, a doubtful procedure in the interest of a uniform administration of justice, we should not hesitate to do so in a case like the present.

The conclusion I have reached is that as the dividends on the whole amount due the creditor, together with the full par value of the collateral, will not sufficiently extend to satisfy the whole

of the creditor's debt, it is entitled to dividends on the whole amount of its debt as it stood on the date of insolvency, without deduction, either for the amount of the collateral in hand or the proceeds received therefrom since the insolvency, and therefore the appeal should be sustained.