**DENSON et al. v. SHAW, Banking Com'r, et al.**

No. 7949; Motion No. 7573.

Court of Civil Appeals of Texas. Austin.

June 21, 1933.

Rehearing Denied July 19, 1933.

J. K. Freeman, B. P. Matocha, and M. G. Cox, all of Cameron, and O. G. Krueger, of Bellville, for appellants.

E. A. Camp, of Rockdale, and Jno. W. & Joe T. Goodwin, of Austin, for appellee Banking Commissioner.

E. A. Camp, of Rockdale, and E. A. Wallace, of Cameron, for appellees Commissioners' Court.

W. A. Morrison, of Cameron, for interveners-appellees.

BLAIR, Justice.

The Cameron State Bank was selected as the county depository of Milam county, and, in lieu of a personal or surety bond, gave a pledge of the securities specified by statute to secure the county funds. At the time the bank became insolvent the county had a deposit of about $108,500, and held pledged securities of the value of about $74,000. The banking commissioner allowed the county to prove its claim on the entire debt of $108,500, and by agreement with the county the securities were applied in payment on its debt, which left a balance of about $34,500 still due. The commissioner declared his intention to allow the county to receive dividends on the entire amount of its claim of $108,500, until such dividends added to the amount of the securities equaled or satisfied the entire debt. Appellants, whose claims for deposits in the insolvent bank had been approved, protested this action of the commissioner upon the ground that as a secured creditor the county was entitled to prove its claim and receive dividends only on the balance due after deducting the amount of the pledged securities applied on the debt; and requested the commissioner to present the question thus raised to the district court for adjudication, as provided by article 458, R. S. 1925. This the commissioner refused to do; whereupon appellants filed this proceeding, setting up the above facts, and prayed for a temporary writ of injunction to enjoin the commissioner from paying dividends on the entire amount of the debt of the county, but that it be paid divi-

dends only on the balance due after deducting the amount of the securities. A general demurrer was sustained to the petition of appellants, upon two propositions of law urged by appellees, the banking commissioner and Milam county: (1) That the action of the commissioner in approving the claim of the county and allowing the dividends on the entire amount of the debt was required by the terms of article 2547, as amended by Acts 1929, 41st Leg., p. 33, c. 11, § 1 (Vernon's Ann. Civ. St. art. 2547) and article 517a, Vernon's Ann. Civ. St. (Acts 1929, 41st Leg., 1st Called Sess., p. 160); and (2) that, if such action was not authorized by these statutes, then the commissioner applied the correct rule, commonly known as the English chancery rule, to the effect "that collateral security by mortgage or otherwise held by the claimant, does not affect the claimant's right to prove up for the full amount of his claim; nor does the fact that he has realized a part of his claim from the subjection of such collateral since the date of receivership; but he is entitled in such case to receive distributions or dividends from the general estate until such dividends added to the amount realized from the collateral, are equal to or sufficient to satisfy his debt." Michie on Banks and Banking, p. 216, § 158.

■ Neither of the statutes cited undertakes to deal with the question, expressly or impliedly, of whether a county holding pledged securities to secure its deposits or county funds shall be allowed to prove its claim and receive dividends only on the balance of its debt after deducting the value of such pledged securities; or whether it will be allowed, as the commissioner authorized it to do, to prove its claim and receive dividends on the full amount of its debt, without regard to the existence of the pledged securities. Article 2547 provides for the character of bond or security a county depository shall make or give to secure the county funds, and for the conditions and obligations imposed as to the security. It provides that, if a personal or surety bond is executed, it shall cover all funds of the county deposited in the bank; and that the county may demand a new or additional bond in the event it finds the bond or sureties thereon insecure for the full amount of the county funds in the depository. This statute further provides that, where a pledge of securities is given in lieu of a personal or surety bond, the securities shall be equal in value to the county funds on deposit, and that, "when the securities pledged by a depository bank to secure county funds shall be in excess of the amount required under the provisions of this Article, the Commissioners' Court will permit the release of such excess; and when the county funds deposited with said depository bank shall for any reason increase beyond the amount of securities pledged, said depository

bank shall immediately pledge additional securities with the Commissioners' Court so that the securities pledged shall at no time be less than the total amount of county funds on deposit in said depository bank." From these provisions of the statute it is manifest that the Legislature contemplated that the bond or securities pledged would always be equal to the amount of the county funds on deposit, and in consequence no deficit would arise in case of insolvency of the depository as to county funds; and there is nothing in the language of the statute to evidence an intention of the Legislature to provide a method of proving and allowing dividends on the entire debt of the county, or on any balance due after deducting the amount realized on the bond, or from the pledged securities. The statute does not undertake to deal with such matters.

With regard to article 517a, it merely provides that "no bank * * * except where specially authorized by Statute or except in case of a deposit of public funds, shall give preference to any depositor by pledging the assets of the corporation as collateral security, and any pledge of such assets contrary to this Article shall be void." Manifestly this statute was enacted as a limitation upon the authority of a bank to pledge its assets so as to prefer one creditor over another, except as provided by specific statute. It recognized the power given a depository of public funds by the same Legislature under article 2547, supra, to give a pledge of securities to secure public funds in lieu of a bond. The spirit or purpose of this article as well as of articles 517 and 532 is to prohibit a bank from pledging its assets so as to secure a preference in favor of any pledgee over other creditors, except as is specifically authorized by statute. Whenever the statute authorizes the pledging of assets of the banks, the preference given the pledgee is only to the extent of the amount of the securities pledged and no more; and it does not undertake to deal with the matter of proving the claim and allowing dividends on the entire debt of the pledgee, or on any balance due after deducting the amount realized from the pledged securities. Such matter is one of equity, and must be determined either under the English chancery rule or the bankruptcy rule; and which of these is the better rule to adopt in this state is the question before us for determination.

There is, of course, an irreconcilable conflict of the cases as to which of these is the better rule. As applied to this case, the English chancery rule would entitle Milam county to prove its claim and receive dividends on its entire debt of $108,500, until such dividends added to the amount of the pledged securities applied by agreement on the debt are equal to or satisfy the debt. While this is referred to as the English chancery rule, the authorities

point out that it has never been enforced in England in the form above stated. It was adopted in the form stated by a five to four decision of the Supreme Court of the United States in the case of Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 374, 43 L. Ed. 640, with regard to proof of claim of a secured creditor of an insolvent national bank; and appellees contend that, since our banking laws are largely patterned after the federal banking laws, this state should likewise adopt the chancery rule. The courts of several states, including Connecticut, Delaware, Vermont, Illinois, Kentucky, North Carolina, Pennsylvania, Virginia, West Virginia, and Wisconsin, have followed the chancery rule as being in their judgment the better rule. Michie on Banks and Banking, vol. 3, p. 216, § 158, and cases cited in note 10. The reason for the rule is stated in the case of State v. Yellowstone Valley Bank, 75 Mont. 43, 243 P. 813, 815, as follows: "The fundamental principle which underlies this rule is that immediately upon insolvency occurring, all of the creditors of the insolvent become joint proprietors of the sequestered property, each one owning such a proportional part of the whole as the debt then due to him bears to the aggregate amount of the debts, and that each one participates in the distribution of the estate, not as a creditor, but as an owner."

Illustrative of the rule is the case of U. S. Fidelity & Guaranty Co. v. Centropolis Bank of Kansas City, Mo. (C. C. A.) 17 F.(2d) 913, 53 A. L. R. 295, where it is held that a county was entitled to its total claim against an insolvent depository, and to dividends thereon until such dividends, with the amount paid by a surety, equaled the deposit.

On the other hand, several states have refused to follow the English chancery rule as adopted by the above authorities, in the liquidation of their insolvent state banks; but have adopted what is referred to as the bankruptcy rule, which, as applied to this case, would allow Milam county to prove its claim and receive dividends only on the balance of its debt after deducting the amount of the pledged securities applied by agreement on the debt. Among the states adopting this rule are Arkansas, Georgia, Iowa, Kansas, Massachusetts, Mississippi, South Carolina, Washington, New Jersey, Ohio, Tennessee. In other states, including Maryland, Montana, Idaho, New Hampshire, Minnesota, and California, the bankruptcy rule has in effect been reduced to statutory form, though of a more restricted form in some states. First American Bank & T. Co. v. Palm Beach, 96 Fla. 247, 117 So. 900, 65 A. L. R. 1398; Michie on Banks and Banking, vol. 3, p. 218. The bankruptcy rule finds its reason in equity, and is the outgrowth of the effort on the part of courts to make a ratable or equitable distribution of the estate of a bankrupt. Or, as was said by Mr. Justice White, in his dissenting opinion in the Merrill Case: "It was undoubtedly from a consideration of this fundamental rule of equity * * * that the bankruptcy rule was formulated." He also pointed out the inequity and injustice that must arise from the application of the chancery rule of distribution, in that, as applied to this case, it would give the county, a secured creditor, an unjust advantage or preference over one who held only an unsecured claim, not only to the extent of the bank assets pledged to secure the deposit, but that the county would receive the further advantage of dividends from the remaining assets on a sum equal to the value of the securities it had already received and applied by agreement on its debt. First American Bank & T. Co. v. Palm Beach, supra, 96 Fla. 247, 117 So. 900, 65 A. L. R. 1398, and notes and cases there cited.

A parallel case to the instant case is that of American Surety Co. of New York v. National Bank of Barnesville, Ohio (D. C.) 17 F. (2d) 942, which is illustrative of the bankruptcy rule, and which holds that, where an insolvent bank's indebtedness to a school district was reduced by a surety's payment under a liability bond, the payment of dividends on the full amount of the debt was held erroneous.

█ The Court of Civil Appeals at El Paso adopted the general bankruptcy rule in the case of Jackson v. Chapman, Banking Commissioner, 263 S. W. 958, in which it is held that, where a creditor's claim against an insolvent bank was secured by a lien on a lot which the creditor had sold the bank, but which was inadequate as security, after crediting the proceeds of the sale of the lot, any balance due upon the debt was provable as a general unsecured claim. We agree with this decision, and, in view of the inequality and injustice which arise under the chancery rule, we are constrained to follow the bankruptcy rule, and hold that, since Milam county has obtained and received from the insolvent bank pledged securities to protect its deposit, it will be required to credit the bank with the amount of the securities and prove its claim and receive dividends only on the balance due after deducting the securities from its debt.

The judgment of the trial court sustaining the general demurrer and dismissing appellants' proceedings for an injunction is reversed, and the cause is remanded for a trial upon the merits in accordance with this opinion.

█ We sustain the action of the trial court in sustaining the general demurrer and dismissing the plea of intervention of interveners, the county school board, and certain

school districts of Milam county. Their allegations show that a part of the $108,500 of the county depository funds belonged to them; that the commissioners' court had correctly contracted with the banking commissioner to pay dividends on the entire deposit until such dividends added to the pledged securities received in part payment are equal to or satisfy the entire debt; that the interveners had received their part of the pledged securities, but a balance remains unpaid on their debt; that, while the commissioner had declared a dividend, he had not paid same as to the county funds in accordance with his written contract with the commissioners; but that in answer to this proceeding merely alleged that he contemplated doing so; and that "interveners were not satisfied with the statement from the Commissioner that he 'contemplated' paying the claim in accordance with the contract," but that they were entitled to a judgment requiring him to pay such dividends in accordance with the contract.

It is manifest that these pleadings and the relief sought are identical with the defense urged by the commissioner and Milam county to this proceeding by appellants. The county is the agency designated by law to contract as to the matter involved, and interveners have no place in this suit. Their interests have been fully protected by the contract, and, although the contract provides for the wrong basis of distribution of the assets of the insolvent bank, it is otherwise valid. From the date of filing the original petition in this proceeding until a general demurrer was sustained thereto, a temporary injunction enjoined the commissioner from paying the dividends declared to the county; and, from the date of filing the amended petition herein until the filing of a supersedeas bond, we think the commissioner pursued the right course in not paying the dividend on the entire amount of the county claim. Our judgment herein is that the county can prove its claim, which includes the interveners' claim, and receive dividends only on the balance due after accounting for the amount of the securities applied by agreement on the debt. ·

Judgment reversed and remanded as to appellees; but affirmed as to interveners.

McCLENDON, C. J., not sitting.

### On Rehearing.

BLAIR, Justice.

On motion for rehearing, the banking commissioner presents but the single question that in adopting the depository statutes the Legislature by necessary implication intended to include or enact the English chancery rule as a part of such statutes. In support of the proposition, it is argued that the depository statutes authorize the selection of either a state or a national bank as county depository; that they were enacted after the federal courts had definitely adopted the chancery rule as to insolvent national banks, which rule the Texas Legislature was impotent to alter; and that, if the bankruptcy rule should be adopted as to insolvent state banks, they would be placed at a decided disadvantage in competing with national banks for depository·contracts, in that the county officials would necessarily select a national bank as the county depository, because, in the event of insolvency, the application of the chancery rule would prove more beneficial to the county. It is further argued from these facts that the Legislature could not have intended to adopt the bankruptcy rule as a part of the depository laws, because it would not be presumed to have thus deliberately and intentionally discriminated against state banks in favor of national banks seeking depository contracts; but that the Legislature by necessary implication intended to adopt or enact the chancery rule as a part of the depository statutes.

The depository statutes require the commissioners' court to select as county depository the bank "offering to pay the largest rate of interest." Article 2546, R. S. 1925. The court is given no discretionary power in the matter; but must give the depository contract to the bank, state or national, offering to pay the "largest" rate of interest. It is manifest that, if the county officials must select as depository the bank offering to pay the largest rate of interest, ·no possible discrimination as between such competing banks can ever arise. The bank selected as the county depository, state or national, is required by the statutes to give the same amount and character of bond or security for the deposits, and no chance for discrimination as between such competing banks can ever arise in that regard. It is also manifest that, if the depository laws are strictly complied with by the depository bank and the county officials, no loss need ever be suffered by the county in the event of the insolvency of the depository bank, because the county officials are given full and plenary power at all times to require a solvent bond, or a pledge of sufficient securities to cover the entire amount of the county funds in the depository. Nor is there any reason why a county should suffer more from the selection of a state bank than from the selection of a national bank, if the depository laws are complied with as to solvent and sufficient security.

██ It is true that unforeseen circumstances may arise, such as unknown insolvency of the sureties on the depository bond, or the fluctuation downward in the value of the pledged securities, at a time when the county officials are unable before the insolvency of

the depository bank to require a new bond or additional securities, in which the county would be benefited by the application of the chancery rule to an insolvent state bank depository. But these are mere contingencies which may never happen, and the statutes do not authorize the county officials to take them into consideration in the selection of the county depository, and manifestly no chance for discrimination can ever arise in that regard as between a state and a national bank competing for the depository contract. That such possible contingencies may arise merely presents the original question in the case of whether it is better to adopt the inequitable chancery rule or the equitable bankruptcy rule for the distribution of the assets of an insolvent state bank. The mere possibility that such contingencies may arise should not require the adoption of the inequitable chancery rule, because, if it should be adopted and the county officials and depository bank fail to comply with the statutes with regard to requiring at all times a solvent and sufficient bond or a pledge of sufficient securities, then it is the individual depositor who must suffer. He is given no power under the law to inquire into the solvency of the bank, or to require or demand security for his deposit. On the other hand, the county officials have the power and authority at all times to inquire into the solvency and sufficiency of the depository bond or the sufficiency of the pledged securities, and may, at any time they deem the county funds insecure, demand a new bond or additional securities of the depository bank. The possibility of the happening of the contingencies aforementioned is so remote and uncertain that courts should not adopt the inequitable chancery rule as to insolvent state banks, because it prefers the secured creditor over the unsecured creditor. The spirit of our banking statutes is to prohibit the preference of one creditor of an insolvent state bank over another creditor. Our decisions are uniform in holding that a bank may not pledge its securities or assets so as to prefer one creditor over another creditor; and that a state or county has no right to a preference over any other general creditor of the insolvent state bank. Austin, Banking Com'r, v. Lamar County (Tex. Com. App.) 26 S.W.(2d) 1062; Foster v. City of Longview (Tex. Com. App.) 26 S.W. (2d) 1059; Shaw, Banking Com'r, v. U. S. F. & G. Co. (Tex. Com. App.) 48 S.W.(2d) 974, 83 A. L. R. 1113. We therefore conclude that the more equitable bankruptcy rule of distribution should be adopted as to insolvent state banks of this state.

The motion for rehearing is overruled.

Overruled.

McCLENDON, C. J., not sitting.