32 P.(2d) 1017

## STATE v. STATE BANK OF ALAMOGORDO.

No. 3936.

Supreme Court of New Mexico.

May 22, 1934.

Turney, Burges, Culwell & Pollard and Edward C. Wade, Jr., all of El Paso, Tex., for appellant.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

SADLER, Justice.

Reconstruction Finance Corporation, as appellant, complains of an order of the district court of Otero county, directing the manner of its participation, as a secured creditor in the assets of State Bank of Alamogordo in liquidation before the court under the act for the winding up of insolvent corporations. John Bingham, as state bank examiner, and Lewis N. Gillis, as coreceiver of the bank, are the real appellees, although the state appears nominally as such.

The bank closed its doors on November 12, 1932, and on the agreed statement of facts upon which the question involved is submitted for our determination, that date must be

taken as the time of declared insolvency. On such date the bank was indebted to appellant in the sum of $28,226.97 for money borrowed evidenced by two notes aggregating in amount the total indebtedness named above. Securing this indebtedness, appellant held as collateral certain notes owned by the bank for an aggregate principal amount of $23,-720.12 and a real estate mortgage covering properties of an estimated value of $24,470.-45. The face amount of the notes held as collateral plus estimated value of the real estate security is thus seen to be $48,190.57.

Through collections made on the notes held as collateral and from the proceeds of the sale of certain of the real estate, appellant between date of closing and date of trial had reduced its indebtedness to $20,550.27, which amount remained secured by the uncollected collateral and the real estate mortgage aforesaid. The question arose whether appellant should be permitted to participate in dividends upon the basis of the amount due it when the bank suspended business, notwithstanding its security; or, upon some other basis.

The trial court, denying appellant's claim for participation in the general assets on the basis of the amount of its claim as it stood upon adjudication of insolvency, entered its order, and adhered to it in the face of a motion to amend, as follows:

"That the amount of said claim, to-wit, $28,226.97, represents the correct amount due the Claimant on the 12th day of November, A. D. 1932; that since November 12, 1932, the Claimant has been paid a considerable sum as the proceeds from collection of the notes receivable which it holds as security and from the sale of real estate included in its mortgage. That other payments are being made to the Claimant from time to time as its securities are liquidated. That the claimant should be permitted to participate in any dividend paid herein to the extent only of the amount due it on the date of the order authorizing such dividend."

It is this ruling which is assailed upon appeal and its correctness presents the only question for review. The matter is one of first impression with us, although fortunately for our consideration of it, the point at issue has been frequently and exhaustively dealt with by some of the ablest jurists of other states and of the federal courts.

The leading case in the United States upon the subject is Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 362, 43 L. Ed. 640, in which Mr. Chief Justice Fuller in a thorough and masterful opinion written for the majority adopted what is known as the equity rule for the distribution of dividends from an insolvent estate. That opinion states the four different rules applicable in the distribution of insolvent estates, as follows:

"Counsel agree that four different rules have been applied in the distribution of insolvent estates, and state them as follows:

" 'Rule 1. The creditor desiring to participate in the fund is required first to exhaust his security, and credit the proceeds on his claim, or to credit its value upon his claim, and prove for the balance, it being optional

with him to surrender his security and prove for his full claim.

" 'Rule 2. The creditor can prove for the full amount, but shall receive dividends only on the amount due him at the time of distribution of the fund ; that is, he is required to credit on his claim, as proved, all sums received from his security, and may receive dividends only on the balance due him.

" 'Rule 3. The creditor shall be allowed to prove for, and receive dividends upon, the amount due him at the time of proving or sending in his claim to the official liquidator, being required to credit as payments all the sums received from his security prior thereto.

" 'Rule 4. The creditor can prove for, and receive dividends upon, the full amount of his claim, regardless of any sums received from his collateral after the transfer of the assets from the debtor in insolvency, provided that he shall not receive more than the full amount due him.' "

The rule first stated is what is known as the bankruptcy rule whereas the one last stated is known as the equity rule. The other two represent variations from the first and last. Not often do we have presented a question which has so engaged the best judicial minds of the country as is the case with this one. It would therefore be profitless for us to enter into a prolonged discussion or restatement of the reasons supporting the conflicting views. Suffice it to say that after a mature weighing of the comparative merits of the two principal rules, we are convinced the equity rule is the better supported by logic and basically sound reason.

Mr. Michie in volume 3 (§ 158, p. 216) of his work on Banks and Banking, published as late as 1931, writes concerning the several rules, as follows:

"English Chancery Rule. Although there is irreconcilable conflict in the cases, the better rule, and that sustained by the great weight of authority is that collateral security, by mortgage or otherwise, held by the claimant, does not affect the claimant's right to prove up for the full amount of his claim; nor does the fact that he has realized a part of his claim from the subjection of such collateral, since the date of receivership; but he is entitled in such case to receive distributions or dividends from the general estate, until such dividends, added to the amount realized from the collateral, are equal to or sufficient to satisfy his debt. This rule, which was adopted in this country in Connecticut in 1817, is frequently referred to as the English chancery rule, though, in that form, it is said never to have been enforced in England at any time."

"Bankruptcy Rule. In some jurisdictions it is held that the rule in equity is the same as the rule in bankruptcy, and that the secured creditor can prove only for the balance of his debt after the collateral shall have been applied. The bankruptcy rule, so called because it has been applied in bankruptcy generally and is the rule prescribed by our National Bankruptcy Act, was invoked in this country first in 1820."

"The Maryland rule provides that the secured creditor must deduct from his original claim any amounts he may have realized from his security, and the balance so shown to be due at the time any particular dividend is distributed shall constitute the basis for computing such dividend. This rule, which was first applied in Maryland in 1887, requires a readjustment of the basis of distribution at the time each succeeding dividend is declared, and most of the decisions sustaining it were influenced by local statutory regulations."

"In Montana the statutory rule for distribution to the secured creditor of a deceased insolvent is held applicable in the case of insolvent banks."

See, also, 3 R. C. L. 682, § 313, under subject, "Banks," and 7 C. J. 750.

Many authorities are cited to the text supporting the different rules which for want of space we do not here supply. We do, however, direct attention to the able opinion by Judge Taft written for the United States Circuit Court of Appeals of the Sixth Circuit in the case of Chemical National Bank of New York v. Armstrong, 59 F. 372, 65 F. 573, 28 L. R. A. 231, which antedates by some five years the opinion of the United States Supreme Court in the Merrill Case. Attention is also drawn to certain late cases adopting the equity rule: In re Prescott State Bank's Estate, 39 Ariz. 32, 3 P.(2d) 788, In re Farmers' & Merchants' Bank (Cal. App.) 292 P. 665, and In re Bank of Oakley, 131 Cal. App. 203, 21 P.(2d) 164. The cases just cited are of particular interest by reason of the similarity in situation existing in Arizona and California under statutory law to that present with us.

The courts of these states mention the fact that there is nothing in their banking acts or insolvency statutes controlling the matter. So it is with us. Our general corporation insolvency act directs a ratable distribution of the assets of the insolvent, although recognizing the superiority of prior liens. Comp. St. 1929, § 32-194. Substantially the same provision in the National Banking Act was involved in the decision of the Merrill Case adopting the equity rule.

A few late decisions which decline to follow the Merrill Case, the first of which cited contains a clear statement of the four rules with a copious citation of authority supporting each, are as follows: First National Bank of Birmingham v. Green, 221 Ala. 201, 128 So. 394; Merchants' Nat. Bank of Ft. Smith v. Taylor, 181 Ark. 356, 25 S.W.(2d) 1048; First American Bank & Trust Co. v. Town of Palm Beach, 96 Fla. 247, 117 So. 900, 65 A. L. R. 1398; Denson v. Shaw (Tex. Civ. App.) 62 S. W.(2d) 344. See, also, L. R. A. 1918B, 1024, for an extensive case note giving the reasons supporting the different rules with a showing of the jurisdictions following each.

We are impressed with the force of the statement of Mr. Chief Justice Fuller in the Merrill Case that the bankruptcy rule in effect operates to set up a preference against the secured creditor. He said:

"Whatever congress may be authorized to enact by reason of possessing the power to pass uniform laws on the subject of bank-

ruptcies, it is very clear that it did not intend to impinge upon contracts existing between creditors and debtors, by anything prescribed in reference to the administration of the assets of insolvent national banks; yet it is obvious that the bankruptcy rule converts what on its face gives the secured creditor an equal right with other creditors into a preference against him, and hence takes away a right which he already had. This a court of equity should never do, unless required by statute, at the time the indebtedness was created."

Some of the cases following the bankruptcy rule advert to the inequalities resulting under the equity rule. That there results inequality of distribution, may be conceded; but not inequality of distribution according to legal right. The very presence of security enforces an inequality of distribution. It is justified because of the legal right inhering in favor of the holder of the security. We feel impelled to follow the equity rule unless as urged by appellees we are controlled by New Jersey decisions under its Corporation Insolvency Act adopted by our territorial Legislature in 1905. Chapter 79, Laws of 1905. The case of Butler v. Commonwealth Tobacco Co., 74 N. J. Eq. 423, 70 A. 319, following the bankruptcy rule is called to our attention. It was decided in 1908, three years after our adoption of the statute in question, hence it cannot carry the binding effect that a decision prior thereto would have. The case is cited by this court to another point in State v. Bank of Magdalena, 33 N. M. 473, 270 P. 881.

That this New Jersey decision represents the first commitment by the Court of Errors and Appeals of New Jersey upon the question before us, and that prior to the Butler Case the law upon the subject in New Jersey was in a state of uncertainty, are propositions established quite convincingly by Vice Chancellor Bergen in writing the opinion in the same case when before the New Jersey Court of Chancery, reported at 73 N. J. Eq. 205, 67 A. 514.

True, Chancellor Vroom, speaking for the Court of Chancery in State Bank v. Receivers of Bank of New Brunswick, 3 N. J. Eq. 266, as early as 1835, in dealing with the New Jersey act of 1829 (P. L. p. 58), entitled "An Act to prevent frauds by Incorporated Companies," of which the later insolvency statute was a re-enactment, had preferred the bankruptcy rule. But "the construction of an adopted statute must be that of the highest court of the state from which it was adopted, and the decision of an intermediate court of appeals is not binding." 59 C. J. 1071.

It is argued that the bankrupt character of our insolvency act should incline us toward adoption of the bankruptcy rule. Yet, notwithstanding the fact that the National Bankruptcy Act is administered in the federal courts, this consideration did not move our highest tribunal to favor the bankruptcy rule as against the equity rule for its federal equity practice. It is even less persuasive to urge upon us that our act has been held by the New Jersey courts to be of an essentially bankrupt character. Butler v.

Commonwealth Tobacco Co., supra; Bloch v. Bell Furniture Co., 111 N. J. Eq. 551, 162 A. 414, 84 A. L. R. 885.

We conclude that the trial court erred in declining to adhere to the equity rule of distribution as urged by appellant. Its order will accordingly be reversed and the cause remanded for further proceedings consistent with the views herein expressed.

It is so ordered.

WATSON, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.