CASE 86—PETITION EQUITY—JANUARY 14.

# Bank of Louisville v. Lockridge.

APPEAL FROM LOUISVILLE CHANCERY COURT.

IN DISTRIBUTING THE ESTATE OF AN INSOLVENT DEBTOR UNDER THE STATUTE ENACTED TO PREVENT PREFERENCES by debtors contemplating insolvency, the chancellor should apply the statutory rule regulating the distribution of an insolvent decedent's estate. Therefore, a lien creditor, after satisfying his lien, is not entitled to share in the general estate until the unsecured creditors have been made equal with him.

HUMPHREY & DAVIE AND W. C. CHURCHILL FOR APPELLANT.

The decisions of this court have fixed the method of distribution of an estate under a voluntary assignment where a creditor holds security for his debt. (Logan v. Anderson, 18 Ben Mon., 114; German Security Bank v. Jefferson, 10 Bush, 330; Citizens' Bank of Paris v. Patterson, 78 Ky., 294; Spratt's Ex'rs v. First National Bank, 84 Ky., 87.)

The rule in regard to the distribution of the estate of an insolvent decedent, where a creditor held security, was 'never fully settled until the case of Spratt's Executors v. First National Bank, 84 Ky., 87.

The rule in reference to the first class—namely, voluntary assignments—is a rule of equity. The rule in reference to the second class —insolvent decedents—is statutory. The question here is which rule shall govern in the distribution of the estate of an insolvent who has made a preference, and against whom proceedings have been successfully taken under the statute in regard to preferential transfers. It is submitted that there is nothing in the language of section 3 of chapter 44 of the General Statutes, page 675, to govern the question, that being a mere practice section. The remark in McAllister v. Savings Bank, 80 Ky., 686, is a dictum. The remark on the same subject in the case of Spratt's Executor v. First National Bank of Richmond,

84 Ky., 87, while perhaps a dictum, should have more influence, the matter of distribution being then in the mind of the court.

A preferential transfer is not void, but operates as a conveyance, and transfers not only the property included in the preferential transfer, but also all other property of the debtor.  (Gideon v. Struve, 78 Ky., 134; Cantrill v. Risk, 7 Bush, 158; Whittaker v. Garnett, 3 Bush, 402.)

The only statutory rule in regard to distribution under the preferential statute is in reference to fiducial claims.  As a preference is declared by the statute to act as a transfer of a debtor's property, it is submitted that the rules in regard to the distribution under voluntary assignments should apply.  (Authorities cited above.)

H. L. STONE, DODD & DODD, CHAS. S. GRUBBS FOR APPELLEE.

The assets of an involuntary assignor are to be distributed in the same manner that the assets of a deceased insolvent are required to be distributed.  Therefore, the lien creditor is to be postponed until the general creditors are made up equally with him out of the assets for general distribution.  (Gen. Stats., chap. 44, art. 2, secs. 3, 7, 8; idem, chap. 39, art. 2, secs. 33-35; McAllister v. Bank, 80 Ky., 689; Logan v. Anderson, 18 B. M., 114; Shouse v. Utterback, 2 Met., 55.)

The bank in this case was a lien holder such as is contemplated by sec. 34, art. 2, chap. 39, General Statutes.  (Martin, Cobb & Co. v. Curd, 1 Bush, 327.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

S. Caye, Jr., & Co. borrowed divers sums of money from the Bank of Louisville for which notes were executed, and to secure their payment various collaterals were pledged.  Caye & Co. becoming insolvent and the bank being desirous of making its debt more secure, obtained the pledge of other collaterals, when a creditor of the firm, Charles Lockridge, instituted his action under the statute enacted to prevent preferences by debtors contemplating insolvency, and obtained a judgment determining that the pledge of the additional securities brought the case within the provisions of the statute.

In distributing the assets the court further held that the general creditors must receive a dividend equal to the amount realized by the bank from its collaterals before

the latter could share in the general distribution. In other words, the court adjudged that the assets of an involuntary assignor must be distributed in the same manner as the assets of an insolvent decedent.

It is contended by counsel for the bank that the same equitable rule of distribution should apply in the case of an assignment by operation of law, as in the case of an assignment by the debtor himself, and the right of the lien creditor to share in the general distribution for his whole debt where the assets are not sufficient to pay all the creditors, is not to be diminished by reason of any lien he may have obtained by contract on the debtor's estate. That when the lien fails to pay his debt, the amount realized from it is not to be credited on the debt and the *pro rata* given him on the balance, but it must be made upon the entire amount due him. In cases of voluntary assignments, where a creditor has acquired a preference by lien, this rule of distribution has long since been adopted by this court.

In Logan v. Anderson, reported in 18 B. M., 114, the rule was established, and it has been followed in several reported cases: German Security Bank v. Jefferson, 10 Bush, 326; Citizens' Bank of Paris v. Patterson, 78 Ky., 291; Spratt's Executrix v. First National Bank, 84 Ky., 85.

It is said in Logan v. Anderson, if a creditor has a mortgage on property of the debtor sufficient to pay fifty cents on the dollar and then makes a subsequent mortgage to the same creditor, including other creditors, on other property sufficient to pay fifty cents on the dollar, the first mortgage creditor has the right to have his whole debt paid while the second mortgage creditors get but fifty cents on the dollar, and for the reason that each

mortgage is given to secure the whole debt of the first
mortgagee, and the fact that the property last mortgaged
fails to pay the last mortgagees is no reason for lessening
the security of the first mortgagee, as he had the legal
and equitable right to obtain both mortgages to secure
his debt.   So, if a creditor holds a mortgage on part of
the debtor's estate and the debtor then assigns his whole
estate for the payment of all his debts, the debt of the
mortgage creditor is embraced by the assignment—not a
part of it but the whole—and in the same manner and to
the same extent as the debts of the creditors who have
no liens.   There are two funds, each of which is liable
for the whole debt of the mortgage creditor, and when
both are necessary for the payment of the debt *equity
refuses to interfere or marshal securities to the prejudice of
the creditor entitled to the double fund.*   Should this doc-
trine apply to assignments made by operation of law
under a statute enacted to prevent fraudulent preferences
is the question involved here.

It is true the law takes the estate from the debtor for
creditors, but has the debtor given to the creditor this
double fund as a security for his debt, and if not will a
court of equity favor the creditor who is attempted to be
preferred so as at last to give him the preference over
general creditors?  His lien he has the right to enforce, but
will the law step in and give him a double security when
at the same time it is attempting to prevent fraudulent
preferment?   It is argued that the equitable rule would
be to credit the claim of the bank by the amount realized
from the lien and then give to the bank its *pro rata* share
of the assets on the balance of its debt.   This rule, if
adopted, would present three modes of distributing the

assets of an insolvent estate : First, If a voluntary assignment both funds would be liable if necessary to pay the whole debt. Second, If involuntary the creditor would get a *pro rata* on the balance due him after satisfying his lien. Third, If the estate is insolvent and the debtor dead the creditor who has the lien must stand off until the general creditors are made equal with him.

It seems to us that one of two modes of distribution must be followed in this case. The assets must be distributed in the same manner as that of a decedent who dies insolvent or as in the case of a voluntary assignment.

Section 34, of article 2, chapter 39, General Statutes, provides the manner in which the estate of a debtor who dies insolvent shall be distributed, and is as follows : " But when any creditor has a lien and the property subject to the lien is not sufficient to discharge the debt he shall not be entitled to any portion of the residue of the estate until all the creditors not having liens shall have received a sum equal, *pro rata*, with such lien creditor." The distribution as between creditors where the debtor dies insolvent is made plain by this statute, and the question arises, Did the Legislature in enacting the law to prevent fraudulent preferences recognize or classify the estates of those passing by operation of law to creditors with the estates of insolvent decedents as to the mode of distribution ? All such estates are subject to the control of courts of equity, and some equitable rule for distribution must be ascertained. It is apparent that the law-making power, when enacting the law in regard to sales, etc., in contemplation of insolvency, had in view the act regulating proceedings in the settlement of the estates of debtors who had died insolvent.

Section 3 of article 2 of chapter 44 provides where estates pass to creditors by operation of law that " the action and proceedings as to the mode of proving claims and otherwise shall be conducted as actions and proceedings for the settlement of the estates of deceased persons are now required to be conducted, so far as the same are applicable," etc.; and by section 7 it is further provided " that in the distribution of the assets of any debtor, as provided, debts due as guardian or administrator or executor shall have priority, as also debts due as trustee, if the trust be created by the deed or will, duly recorded in the proper clerk's office."

The statute has designated the claims of those who under this operation of law passing the estate to creditors shall have prior liens, following the priority given to claimants against the estates of those dead, showing plainly that the Legislature regarded the act of insolvency as placing the estate of the insolvent debtor in the same condition and to be distributed in the same manner as the estate of a decedent, while the third section of the act may apply to the mode of proceeding alone, such as filing the petition and proving claims. A careful reading of both sections indicate clearly that the Legislature was attempting to regulate the mode of distribution as well as the mode of proceeding by the provisions of the statute with reference to the estates of deceased persons. It is the contract relation between the creditor and the debtor that gives to the former the right to resort to both funds to pay his debt when the lien is insufficient for that purpose. The rule springs from no equitable doctrine, but on the contrary a court of equity declines to interfere because the debtor, by his voluntary assignment, has placed

every debt on the same footing, and it is to secure the whole debt to the extent the estate will pay and not a part of it; but where the law seizes the estate for the purpose of preventing preferences, although for the benefit of creditors, equity must say, if the statute under which the proceeding is had has not already determined, how the assets shall be distributed. If left to the creditor and debtor under their contract by reason of which the estate has passed to creditors, the creditor would get all; but here is no contract, and we find an equitable rule established by statute by which the second creditor is held off until the general creditors are made equal, and when that is done all share equally in the remaining assets. This rule is applied to a decedent's estate who is insolvent and who has created a lien in favor of one creditor, and there is no reason why it should not apply to a case where the law has taken the debtor's estate from him and holds it for equitable distribution between creditors. It is true that the creditor is not rewarded for his vigilance in obtaining a lien, but to prevent this where the debtor contemplated insolvency was the object of the statute, and in distributing the assets, when by operation of law the creditors become entitled to the estate, the rule in regard to the distribution of the assets of the estate of a decedent who dies insolvent should apply.

The judgment below conforming to these views is affirmed.