FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Appellant, vs. A. C. KINGSTON, Commissioner of Banking, and another, Respondents.

*December 7, 1933—January 9, 1934.*

For the appellant there was a brief by *Miller, Mack & Fairchild* of Milwaukee and *Barlow & Fugina* of Arcadia, attorneys, and *Paul R. Newcomb* of Milwaukee of counsel, and oral argument by *Mr. Newcomb.*

For the respondents there was a brief by *Alden Losby* and *Ramsdell, King & Linderman,* all of Eau Claire, and oral argument by *Mr. Bailey E. Ramsdell* and *Mr. Losby.*

WICKHEM, J. There is no issue of fact involved in this case, and the sole question presented is whether plaintiff, a secured creditor, should be permitted to receive dividends upon the full amount of its claim, or, as was held by the Commissioner of Banking and the trial court, upon the balance due after deducting the amounts realized by the sale of the collateral security.

Upon this question there is a conflict of authority. The English rule applicable to this situation, frequently known as the chancery rule, has been adopted by a majority of courts in this country. Under this rule, which plaintiff contends for, the creditor is permitted to prove the full amount of his claim and to receive dividends upon the basis of this amount regardless of sums realized by sales of collateral after the transfer of the assets to the liquidator, provided the dividends thus received, plus the amount realized upon the collateral, do not exceed the full amount of his claim. Under the so-called bankruptcy rule the secured creditor must either credit the value or the proceeds of the collateral upon the obligation and prove for the balance, or surrender his security and prove for the entire amount of the claim. Variations of these rules are noted, but fundamentally the bankruptcy and the chancery rules may be said to represent the difference in opinion upon the subject. This court is definitely committed to the chancery rule. In *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909, the court very clearly lays down the rule applicable in this state to such a situation as is here presented. Speaking through Mr. Justice MARSHALL, it was there said:

"Even that would not necessarily condemn as fraudulent, or wrongful, expenditure from the trust fund in the interest of securing as great a reduction of the secured debt by the collateral as possible; because the holder thereof is not bound to have his collateral valued and applied upon his claim, nor is he bound to exhaust his collateral and confine his claim against the trust fund to the balance. True, there is some conflict in the authorities on this, but the better rule, it

seems, and the only one that can be enforced without trespassing upon the constitutional right of property, is that every creditor of an insolvent, whose property is in the hands of a court receiver for the benefit of creditors, has an equal right with every other creditor in any general distribution that may be made of the trust fund. His right in that regard becomes vested when the creditor relation is established. Every contract right includes, by implication, the law for its enforcement, existing at the time of its inception. *Peninsular L. & C. Works v. Union O. & P. Co.* 100 Wis. 488, 76 N. W. 359; *Bronson v. Kinzie,* 1 How. 311. A creditor, having a vested right to the property of his debtor generally for the collection of his claim, does not lose or impair it by taking security. Having such right, he does not lose or impair it by the circumstance that a receiver stands in the place of his debtor. He may prove his claim to the full amount and share with all other creditors on the basis of the face thereof in every general distribution of trust funds, till such time as, with the dividends received and the proceeds of his security, he shall have received full payment; and if there is then anything left of his security, it will belong to the trust fund. He is entitled to all the advantages of his position as a general creditor, and all the advantages accruing out of holding security, because such was the contract with the debtor." Pages 343, 344.

The court further stated that the refusal on the part of some authorities to apply this rule was due either to a misconception of the proper application of the rule or a failure to observe that the bankruptcy law is wholly statutory. The same view was expressed in *Corbett v. Joannes,* 125 Wis. 370, 104 N. W. 69, in which the court quoted with approval from the opinion of Mr. Justice FULLER in *Merrill v. Jacksonville Nat. Bank,* 173 U. S. 131, 19 Sup. Ct. 360, which is the leading statement in this country of the chancery rule. The chancery rule is also approved in the case of *In re Meyer,* 78 Wis. 615, 48 N. W. 55, although there the security consisted of the indorsement of a third person, and the application of the equity rule would not affect assets otherwise available for the general creditors. This circum-

stance is not sufficient to destroy the authority of the case. The three cases, taken together, indicate that this court adopts and applies the equity rule. This rule has been attacked and defended with equal vigor. See 15 Illinois Law Review, 170. It is pointed out on behalf of the defendants that if the security had been sold prior to liquidation proceedings and the proceeds applied to the debt, there would remain as a provable claim only the balance, and that there is no reason to make a distinction when the collateral is sold after the claim is filed and proved. In the first case, however, the claim has been actually reduced or partly extinguished at the time when claims are to be filed, and in the second case it is wholly unpaid at such time. There is certainly nothing inequitable in the position of a secured creditor. If such a creditor has attained a secured position lawfully, his rights as a general creditor should not be diminished by reason of his prudence in exacting security. *Harrigan v. Gilchrist, supra.* We are not persuaded that the equity rule is unjust and, as heretofore noted, it is firmly established in this state. We see no reason to depart from it.

It is conceded that the enactment of ch. 477, Laws of 1933, making applicable to bank liquidations the bankruptcy rule, came too late to affect this case. It is suggested by defendant that the enactment of this chapter indicates the view of the banking department and of the legislature that the bankruptcy rule is the equitable and fair rule. However, the legislature has not seen fit to modify the equity rule until the enactment in question, and then has modified it only in so far as bank liquidations are concerned. The enactment may involve a recognition of the necessity of legislation to change a rule of property that had been long established and held in this state. Beyond that it has no materiality here.

*By the Court.*—Judgment reversed, and cause remanded with directions for further proceedings in accordance with this opinion.