# Richmond

### THE GREENBRIER JOINT STOCK LAND BANK v. ELIZABETH W. OPIE, EXECUTRIX OF HUGH H. KERR, DECEASED.

November 14, 1935.

Present, All the Justices.

The opinion states the case.

*Curry Carter,* for the appellant.

*J. M. Perry* and *John D. White,* for the appellee.

GREGORY, J., delivered the opinion of the court.

The Greenbrier Joint Stock Land Bank is complaining of a decree entered in a cause pending in the Corporation Court for the city of Staunton wherein it was required to pay a portion of a certain attorney's fee awarded the attorney for the executrix for instituting and prosecuting the suit and for the further reason that the court refused to permit it to participate in the general fund in the hands of the executrix on the basis of its entire debt against the estate as it existed at the death of the testator and as previously proven, audited and reported by the commissioner, instead of allowing it to prove only the balance due after crediting on the claim the amount received from the sale of the security.

On December 14, 1932, Hugh H. Kerr died testate and insolvent, owning a valuable farm in Augusta county and considerable personal property. He owed some $40,-000, approximately $24,000 of which was due and owing the appellant, it being represented by a certain bond which had been reduced to the amount stated and which was payable on the amortization plan and secured by the lien of a first deed of trust on the said farm.

Shortly after the death of Mr. Kerr, his daughter, Elizabeth W. Opie, qualified as his sole executrix and within three months thereafter she filed the bill in this cause alleging that the liens on the real estate and the rights and priorities of the creditors of the estate were subject to "great doubt and perplexity," and that the estate was insolvent. She prayed for the construction of the will and that the conflict in the claims of the lien and general creditors be referred to a commissioner. She asked that he be

required to convene the creditors and report upon the validity and priority of their respective claims and that their rights be settled. She further prayed that the real and personal property belonging to the estate be sold as soon as expedient and that an attorney's fee be allowed her attorney for instituting and prosecuting this suit.

The creditors of the estate were made parties defendant and the appellant, one of the defendants in the court below, filed its answer. It was the largest single creditor of the estate. It denied that there was any great doubt and perplexity as to the liens and their priorities, but asserted that the liens were fixed at the date of the death of the decedent. It averred that its lien was the first and paramount lien on the real estate conveyed in the deed of trust; that said lien could not be disturbed by any subsequent transaction of the grantors and that it was entitled to stand upon its said deed of trust and request a foreclosure of the same when it deemed it advisable to do so. It further averred that its debt was partially in default, and that under the terms of the said deed of trust it had elected to declare the whole amount secured therein due and payable.

The appellant asked by way of cross-relief that the said deed of trust be declared the first lien on the real estate therein conveyed; that it be entitled to foreclose said deed of trust and apply the net proceeds of sale as a credit on its debt; and that it have a judgment against the executrix for any deficiency that might arise.

The court by its decree referred the matter to one of its commissioners who filed his report showing that Mr. Kerr owned at the time of his death a farm containing 362 acres; that its fee simple value was $15,000; that there were specific liens binding said farm amounting to $33,-104.52, and that the lien of the appellant was the first lien, subject only to the taxes.

In the commissioner's report the full amount of the claim of the appellant was allowed and reported. Later this report was confirmed by a decree, thus finally estab-

lishing the appellant's claim. The farm was ordered to be sold, and commissioners, who were appointed for that purpose, were directed to make a sale of the said lands after proper advertisement.

Still later said commissioners of sale reported to the court that they had sold the land; that the Greenbrier Joint Stock Land Bank had become the purchaser at its bid of $12,000. The sale having been duly reported to the court it was, by decree, ratified and confirmed. It was decreed that the lien debt of the Greenbrier Joint Stock Land Bank be credited with the sum of $11,536.25, (the difference between the purchase price of $12,000 and the share of cost of suit and sale to be borne by petitioner.) Later the cause was recommitted to a commissioner in chancery to report upon such matters as might thereafter be required by the court or requested by any person in interest.

On February 19, 1934, the commissioner filed his second report in which it was disclosed that $6,216.11 remained for distribution among the creditors. He found that the Greenbrier Joint Stock Land Bank was entitled to receive a dividend, not on its entire debt as it existed at the time of Mr. Kerr's death and as reported and established by the commissioner in his first report, but only on what remained of its debt after crediting it with the proceeds from the sale of the farm. The commissioner also found that the attorney for the executrix was entitled to a fee of $350 to be paid out of the funds in the hands of the executrix. This report was duly confirmed notwithstanding the exceptions filed by the Greenbrier Joint Stock Land Bank and the executrix was directed to make distribution of the funds in her hands in accordance with the report of the commissioner.

There are two assignments of error to the decree. First, the court erred in allowing the attorney for the executrix a fee to be paid in such a manner that any part thereof would directly or indirectly be borne by the appellant. Second, the court erred in refusing to permit the appel-

lant to participate in the general fund ratably on the basis of its entire debt as it existed at Mr. Kerr's death and as proven, audited and reported by the commissioner in his first report, rather than on the balance after crediting what was realized from the sale of the land.

There are certain pertinent observations that might be made about the suit which shed light upon it. For instance, the complainant in the bill asked that the court construe the testator's will, but this request evidently was abandoned for the record does not disclose that the court ever construed the will. The complainant alleged that the liens on the real estate and the rights and priorities of the creditors were subject to great doubt and perplexity but she failed to show that there was any "doubt or perplexity" about the liens. In fact the record fails to show that there was any conflict in the claims against the estate. It was alleged that the estate was insolvent and she requested the court to decree a sale of both the real estate and the personal property. If there was any necessity for the executrix to institute the suit it is not shown by the record. It being perfectly obvious from the beginning that the estate was insolvent, the devisees under the will manifested no interest in the suit. No answer appears to have been filed by them though they were made parties defendant to the cause. While the suit purports to have been instituted by the executrix for the purpose of construing the testator's will and the settlement of the estate, it in reality is a creditor's suit in which one general creditor is contesting the right of the appellant to a dividend on the basis of its entire debt, and asserting that the appellant is entitled to a dividend only upon the balance of its debt after the proceeds of the sale of the land have been applied as a credit to its original debt.

The record also discloses that the appellant was opposed to having its deed of trust enforced in this suit. It was anxious to be dismissed from the suit in order that it might foreclose the deed of trust according to its terms whenever it was deemed to be desirable, the appellant

having the first lien on the land subject only to taxes amounting to only $141.

Adverting now to the first assignment of error relating to the award of an attorney's fee to be paid the attorney for the executrix, a portion of which was directed to be paid out of the amount that is due the appellant, we perceive no new principle to be applied. The appellant was represented by its own counsel from the beginning. Its interests were adverse to those of the other creditors and the executrix. No fund was discovered, created or preserved by the executrix or her counsel which enured to the common benefit of all. This seems to be the test of the power of the court to require one party to contribute to the fees of counsel of another party. Of course there have been cases where an executor has been allowed counsel fees in a suit to maintain the will when warranted by the circumstances. This principle is exemplified in the case of *Butt et al.* v. *Murden et al.,* 154 Va. 10, 152 S. E. 330, 69 A. L. R. 1048, where the executor was allowed counsel fees in an unsuccessful attempt to uphold the will. In *Lake's Adm'r* v. *Pattie,* 116 Va. 130, 81 S. E. 78, it was held that an administrator should be allowed counsel fees for defending a claim which he had good reason to believe was not a just or legal one against the estate when the other distributees refused to defend it. Those cases, however, have no application here. The appellant was represented by its own counsel. There was no unjust, or illegal claim being asserted against the estate. While the suit was instituted by the executrix primarily to construe the testator's will, it, in effect and in reality, was a creditor's suit. The rule regarding the allowance of counsel fees in creditor's suits applies here.

In *McCormick* v. *Elsea,* 107 Va. 472, 59 S. E. 411, 412, the court said: "Except in rare instances, the power of a court to require one party to contribute to the fees of the counsel of another party, must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which enures to the

common benefit of all; but the discretion vested in the court should never be exercised in a case where the interests of the party whose fund is sought to be charged are antagonistic to the party for whose benefit the suit is prosecuted."

In *Stuart* v. *Hoffman & Co.*, 108 Va. 307, 61 S. E. 757, 759, the court re-states the rule in this language: "In *Stoneburner* v. *Motley*, 95 Va. 784, 30 S. E. 364, it was said: 'There are cases which justify courts in making allowance for fees to counsel to be paid out of the funds under their control, a power capable of great abuse and one which should be exercised with the most jealous caution and regard to the rights of the litigants. In most cases, it is better to leave those concerned to contract for the services rendered or received. But, while this is true, it is also true that, where parties to a suit, unrepresented by counsel, reap the benefit of services rendered in the progress of a cause, it is right and proper that those who receive the benefit, should be required to make just compensation for it. But we repeat, it is a power which is very capable of being abused and should, therefore, be cautiously exercised, lest thereby the administration of justice be brought into reproach.' "

In the case of *Mann* v. *Bradshaw's Adm'r*, 136 Va. 351, 118 S. E. 326, the court held that inasmuch as the estate was plainly insolvent and the actual controversy in the suit was in truth wholly between creditors; that the active defense made by the attorney for the administrator did not benefit the beneficiary of the estate and that the creditors were represented by their own counsel, an allowance for counsel fees against them would not be permitted.

 Our conclusion is that under the facts and circumstances in this case no portion of an award of counsel fees in favor of counsel for the executrix should be borne by the appellant since it was represented by its own counsel from beginning to end.

The remaining assignment of error is directed to that portion of the decree which refused the appellant the right

to participate in a dividend in the fund on the basis of its entire claim rather than on the basis of the balance remaining after the application of the proceeds of the sale of the land.

As we have already seen the appellant did not voluntarily enforce its deed of trust. It was opposed to having it enforced in a court of equity. Its rights were limited and circumscribed only by the terms of the deed. Its lien was the first lien on the land save the taxes of $140. The commissioner, to whom the cause was referred, audited and reported to the court the entire debt and lien of the appellant and the court allowed the full amount thereof by confirming the report. At this time the land had not been sold. It was sold later and purchased by the appellant for $12,000. This amount was applied on the debt due the appellant and the deficiency was made the basis for the dividend out of the fund in the hands of the executrix.

The question here to be decided is whether a creditor of an insolvent estate is entitled to prove and receive a dividend on the full amount of his debt irrespective of any collateral security held for the debt where the collateral is insufficient to pay the debt; or is he entitled to prove and be allowed a dividend only upon the difference between the entire debt and the amount later realized from a sale of the collateral?

There is considerable conflict upon this question. The majority of the courts of this country have adopted the English rule which has frequently been referred to as the chancery rule. This rule authorizes the creditor to prove the full amount of his claim and to receive dividends on that amount regardless of any sums realized by sales of collateral security, provided the dividends so received plus the amount realized upon the collateral does not exceed the full amount of his claim. This is not true in bankruptcy. There the rule is that the secured creditor must either credit the value or the proceeds of the col-

lateral upon the debt and prove for the balance, or surrender his security and prove for his entire claim.

There is an annotation in 94 A. L. R. Annotated, page 468, in which this subject is treated extensively and the cases collected. After setting forth the four governing rules applied in the various jurisdictions, the annotator in 94 A. L. R., at page 479, quotes the following from *In re Prescott State Bank's Estate,* 39 Ariz. 32, 3 P. (2d) 788: "The chancery rule (Rule 4) insists that contracts between the creditor and debtor and the rights flowing therefrom are not different after the debtor becomes insolvent from what they were before; that, though the remedy may be altered from one *in personam* to one *in rem,* otherwise they are the same. It is said the secured creditor, in the absence of positive or statutory law prior to insolvency, has the absolute right to recover his debt from the general assets of his debtor, without recourse to any collateral he may have taken, and that this contract right of recourse to the general assets is a vested right, which the accident of insolvency cannot take from him either upon legal or equitable principles. The debt, or personal right, in such cases, is the principal thing, the collateral being only security *pro tanto* in case the debt is not paid in full by the debtor or his estate. The Illinois rule (Rule 3), like the chancery rule, recognizes that the debt is the principal thing, and permits a secured creditor to keep his security and receive dividends upon the amount of his claim when filed, such amount being determined by deducting therefrom anything he has theretofore realized on the security. The Maryland rule (Rule 2), likewise, leaves it up to the secured creditor to dispose of or hold his security; but, if he does realize out of his security, his dividends are upon any balance after proper credit. The bankruptcy rule (Rule 1), on the contrary, disregards the contract status, and compels the creditor to deduct the value of his collateral from his claim and file for the balance, or to surrender his collateral to the receiver or trustee and prove his whole debt. It is said by the proponents of this

rule that it results in ratable distribution to all the creditors, both secured and unsecured. The supporters of this rule admit it is found in the bankruptcy statutes, but deny that its origin is statutory. They say it was a rule of equity, both in England and this country, long before it found statutory expression, and was of frequent application in the distribution of assets of insolvents. While the results under this rule might accomplish in some cases a more equal distribution of the assets, it ignores the contract right of the secured creditor and also the fruits of his diligence in exacting security."

The foregoing quotation is explanatory of the four rules. In that case the court applied rule 4 which is the English or chancery rule and the one invoked here by the appellant.

The California court in *In re Bank of Oakley,* 131 Cal. App. 203, 21 P. (2d) 164, adopted the chancery or fourth rule. It proceeded upon the theory that the collateral was a pledge; that it is the well established rule of law that the pledgee may sue to recover the debt without first exhausting the subject of the pledge and that as a pledge is security for the payment of the debt, the pledgee has the right to retain possession of the property pledged until his debt is paid. See 94 A. L. R. 479.

Another annotation treating the same subject and collecting the earlier cases is found in L. R. A. 1918B, 1042.

The leading case dealing with this subject is *Chemical National Bank* v. *Armstrong* (C. C. A.), 59 Fed. 372, 378, 28 L. R. A. 231. The opinion in this case was written by Judge Taft, who later became the Chief Justice of the United States. In it, he discussed the principles controlling the point we are now dealing with and quoted and cited a great many authorities. His conclusion was that "the great weight of authority in England and this country is strongly opposed to the view that a creditor with collateral shall be thereby deprived of the right to prove for his full claim against an insolvent estate."

Another important case is that of *Merrill* v. *National*

*Bank of Jacksonville,* 173 U. S. 131, 19 S. Ct. 360, 363, 43 L. Ed. 640. Chief Justice Fuller discussing the position of a secured creditor in relation to an insolvent debtor's estate had this to say:

"The fourth rule is that ordinarily laid down by the chancery courts, to the effect that, as the trust created by the transfer of the assets by operation of law or otherwise is a trust for all creditors, no creditor can equitably be compelled to surrender any other vested right he has in the assets of his debtor in order to obtain his vested right under the trust. It is true that, in equity, a creditor having a lien upon two funds may be required to exhaust one of them in aid of creditors who can only resort to the other, but this will not be done when it trenches on the rights or operates to the prejudice of the party entitled to the double fund. *Story Eq. Jur.* (13th Ed.), sec. 633; *Re Bates,* 118 Ill. 524, 9 N. E. 257 [59 Am. Rep. 383]. And it is well established that in marshalling assets, as respects creditors, no part of his security can be taken from a secured creditor until he is completely satisfied. *2 White & Tudor,* Leading Cases in Equity (4th Am. Ed.) pt. 1, pp. 258, 322."

And later on in the opinion commenting upon the double security of a secured creditor he said:

"In *Kellock's Case,* Lord Justice W. Page Wood (soon afterwards Lord Chancellor Hatherly) said:

" 'Now, in the case of proceedings with reference to the administration of the estates of deceased persons, Lord Cottenham put the point very clearly, and said: "A mortgagee has a double security. He has a right to proceed against both, and to make the best he can of both. Why he should be deprived of this right because the debtor dies, and dies insolvent, it is not very easy to see." ' "

And still later in the course of his opinion this was said:

"We repeat that it appears to us that the secured creditor is a creditor to the full amount due him when the insolvency is declared, just as much as the unsecured creditor is, and cannot be subjected to a different rule.

And as the basis on which all creditors are to draw' dividends is the amount of their claims at the time of the declaration of insolvency, it necessarily results, for the purpose of fixing that basis, that it is immaterial what collateral any particular creditor may have. The secured creditor cannot be charged with the estimated value of the collateral, or be compelled to exhaust it before enforcing his direct remedies against the debtor, or to surrender it as a condition thereto, though the receiver may redeem or be subrogated as circumstances may require."

In Virginia the English or chancery rule, which is the same as rule number 4, has been adopted. In *Pace* v. *Pace's Adm'r*, 95 Va. 792, 30 S. E. 361, 363, 44 L. R. A. 459, Judge Harrison said:

"There are many cases holding that where a creditor of an insolvent person who is dead, or has made an assignment for the general benefit of creditors, holds collateral security for his debt, and after the death, or the assignment, of his debtor realizes on the collaterals, he may, notwithstanding, prove against the decedent's estate, or the assigned estate for the full amount of his debt as it stood at the time of his death, or assignment. The grounds upon which these cases proceed are ably set forth in the opinion of Judge Taft in *Chemical National Bank* v. *Armstrong*, 59 Fed. [372], 380, 8 C. C. A. [155], 163 [28 L. R. A. 231], in which he reviews all the authorities."

In *Bank* v. *Wm. R. Trigg Co.*, 106 Va. 327, 56 S. E. 158, 164, Keith, P., in delivering the opinion of the court quoted from *Pace* v. *Pace's Adm'r, supra;* and referred to the opinion of Judge Taft in *Chemical National Bank* v. *Armstrong* (C. C. A.), 59 Fed. 372, 380, 28 L. R. A. 231, where the syllabus dealing with this subject is as follows: "Creditors of an insolvent national bank cannot be required, in proving their claims, to allow credit for any collections made after the date of the declared insolvency from collateral securities held by them." As to that case, Judge Keith says: "In the course of the opinion, Judge Taft, after considering a great number both of English and

American cases concludes that the great weight of authority is strongly opposed to the view that a creditor with collateral shall be thereby deprived of the right to prove for his full claim against an insolvent estate."

While the facts in the two Virginia cases are not similar to those in the instant case, yet the principle announced in those cases forcefully applies here. This, of course, compels the conclusion that the lower court should have allowed the appellant to participate in a dividend in the fund based upon its entire debt.

It is contended on behalf of the Staunton National Bank, which is styled in the brief as a general creditor, that inasmuch as the appellant had filed an answer in the court below asking that it might have a judgment for any deficiency that might exist after applying the proceeds of sale to its debt that it thereby took an inconsistent position with its asserted right here to prove for its entire debt and that it should now be allowed a dividend only on the deficiency.

We do not believe this contention to be sound under the pleadings in the cause. The effect of the suit was to force the sale of appellant's security against its will. The appellant's claim was fully established before the land was ordered to be sold. If the appellant had first foreclosed its deed of trust and applied the proceeds of sale on its debt it would have thereby voluntarily surrendered its right to prove for the entire debt and it would have been limited to proving for the deficiency. But such was not the case. There had been no prior voluntary sale of the security (the land) and application of the proceeds.

We find nothing in the principle applicable here which infringes upon the provisions of Code, section 5391, regarding the ratable distribution of a decedent's assets.

It is argued that by reason of that section, we must apply the bankruptcy rule in Virginia and not the English or chancery rule. That section provides for the ratable distribution among creditors of the assets of an insolvent estate. A creditor is entitled, under the statute, to share

ratably with other creditors of the same class, upon his *entire* debt, rather than upon a *part* of his debt. That is all that the appellant is asking here and that is what the court allowed when it confirmed the first report of the commissioner.

We reverse the decree complained of and remand the cause to the trial court for the entry of a proper decree, refusing the attorney's fee claimed, and allowing the appellant a dividend upon the remaining fund based upon its entire claim against the estate.

*Reversed and remanded.*