THE STATE and RICHARD R. NACY, State Treasurer, Appellants, v. O. H. MOBERLY, Commissioner of Finance of the State; RICHARD JOHNSON, Special Deputy Commissioner of Finance in Charge of the Affairs and Assets of the BANK OF AURORA, a Corporation; and BANK OF AURORA.—127 S. W. (2d) 431.

Division Two, April 20, 1939.

*Roy McKittrick*, Attorney General, and *Covell R. Hewitt*, Assistant Attorney General, for appellants.

566

*Farrington & Curtis* for respondents.

BOHLING, C.—What amount constitutes the basis for the computation of dividends payable to the State of Missouri, a creditor holding security, out of the free assets of an insolvent State bank is the question presented for determination: On June 13, 1930, the Finance Commissioner of the State of Missouri took possession of the Bank of Aurora, one of the duly selected State depositories. A claim on behalf of the State of Missouri, filed November 14, 1930, in the principal amount of $308,109.10 was duly allowed on December 18, 1930, in the sum of $273,091. Thereafter, the State of Missouri converted all collaterals securing its deposit into cash, realizing $236,879.87 and leaving a balance due of $36,211.13. Two dividends, amounting in the aggregate to fifteen per centum, have been declared out of the free assets. The foregoing epitomizes the material facts insofar as they are definitely detailed of record. The State contends said dividends should be reckoned upon the sum of $273,091; whereas the Commissioner of Finance says and the court *nisi* held they should be computed upon the sum of $36,211.13.

Generally, one of four rules has been applied to the right of a secured creditor to share in the free assets of an insolvent estate. [Merrill v. National Bank of Jacksonville, 173 U. S. 131, 135, 19 Sup. Ct. 360, 362, 43 L. Ed. 640, 642; Annotations, L. R. A. 1918B, 1024; 94 A. L. R. 468; 9 C. J. S., p. 1078, sec. 537; 7 Am. Jur., p. 534, sec. 734; 3 Michie, Banks and Banking (1931 Ed.), p. 216, sec. 158. Cf. 7 C. J., p. 750, sec. 545; 24 C. J., p. 727, sec. 1795, p. 729, sec. 1799; 32 C. J., p. 884, sec. 177; 3 R. C. L., p. 682, sec. 313; 14 R. C. L., p. 659, sec. 33; Jones on Collateral Securities (3 Ed.), sec. 587 et seq.; Glenn, Creditors' Rights and Remedies (1915 Ed.), sec. 535 et seq.; 34 Mich. L. Rev. 309; 15 Ill. L. Rev. 170; 20 Va. L. Rev. 234.] Applicable statutory directions control; but, absent statutory

provisions more specific than a direction for ratable or *pro rata* distribution, the chancery or equitable rule has been adopted in a greater number of jurisdictions than any of the other rules. The rules are:

(1) The creditor is required first to exhaust his security and credit the proceeds on his claim or to credit its value on his claim and prove for the balance, it being optional for him to surrender his security and prove for his full claim; commonly known as the bankruptcy rule.

(2) The creditor can prove for and receive dividends upon the full amount of his claim regardless of any sums received from his security after the transfer of the assets from the debtor in insolvency; commonly known as the chancery or equitable rule.

(3) The creditor can prove for and receive dividends on the amount due him at the time of proving or filing his claim, being required to credit as payments all sums received from his security prior thereto; commonly known as the Illinois or Montana rule.

(4) The creditor can prove for the full amount, but shall receive dividends only on the amount due him at the date of distribution of the fund; that is, he is required to credit on his claim as proved all sums received from his security and may receive dividends only on the balance due him; commonly known as the Maryland rule.

Under the last three rules it is possible for a secured creditor to be paid in full; and said rules are subject to the limitation the secured creditor shall receive from all sources no more than the debt.

A rule has been applied in Kentucky which prevented the secured creditor sharing in the general assets until the unsecured creditors received an amount equal *pro rata* with the secured creditor. [Bank of Louisville v. Lockridge (1892), 92 Ky. 472, 18 S. W. 1; and Kentucky cases cited in L. R. A. 1918B, 1032, n. 63.]

The so-called chancery or equitable rule proceeds upon the theory the legal rights arising from the debtor's obligation and the security are not one and the same; that secured creditors have two sources of payment; i. e., the liability of the debtor, in common with unsecured creditors, and the liability of the security arising out of a lawful contract with the debtor; that the one is personal; the other is *in rem;* that the personal liability gives rise to a claim against the debtor's general or free assets while the liability of the security continues as a claim *in rem;* that the security stands as security for the whole debt, every dollar of it; that, absent statutory provisions affecting said rights at the time of the contract, insolvency effects no change in the legal status existing between the creditors and the insolvent debtor or gives unsecured creditors greater rights than they theretofore possessed; and that if inequality of distribution results, it is an inequality according to legal right. [Among others: Merrill v. National Bank (1899), 173 U. S. 131, 138, 140, 141, 146, 19 Sup. Ct. 360, 363, 364, 366; 43 L. Ed. 640, 643, 644, 646; (a five to four ruling involv-

ing a statute providing for "a ratable dividend"); followed by the full court in Aldrich v. Chemical National Bank (1900), 176 U. S. 618, 638(2), 20 Sup. Ct. 498, 506(2), 44 L. Ed. 611, 618(2); Chemical National Bank v. Armstrong (C. C. A. 1893), 59 Fed. 372, 374, 28 L. R. A. 231, 234, 16 U. S. App. 465, 528 (Mr. Justice Brown, and then Circuit Judges Taft (writing) and Lurton); Greenbrier Joint Stock Land Bk. v. Opie (1935), 165 Va. 334, 344, 182 S. E. 255, 259; State v. State Bank of Alamogordo (1934), 38 N. M. 338, 342, 32 Pac. (2d) 1017, 1020; Re Prescott State Bank's Est. (1931), 39 Ariz. 32, 37, 3 Pac. (2d) 788, 790; First Wisconsin National Bank v. Kingston (1934), 213 Wis. 681, 684, 252 N. W. 153, 155, 94 A. L. R. 465, 468. Consult Harrigan v. Gilchrist (1904), 121 Wis. 127, 343, 99 N. W. 909, 975.]

The reasoning underlying the bankruptcy rule is stated in, among others, the dissenting opinions in the Merrill case, 173 U. S. l. c. 147, 172, 19 Sup. Ct. l. c. 367, 376, 43 L. Ed. l. c. 646, 655. [See also First National Bank v. Green, 221 Ala. 201, 128 So. 394.]

Under the view we take of the case we need not further develop the authorities. They are collected and classified in the annotations in L. R. A. 1918B, 1024; 94 A. L. R. 468; the Merrill, Chemical National Bank, and First National Bank cases, supra; Rankin v. Yellowstone Bk. & Tr. Co., 75 Mont. 43, 243 Pac. 813; and the texts and articles first herein cited.

In re McCune (Banc, 1882), 76 Mo. 200, 206, cited by the Commissioner of Finance, involved the rights of secured creditors having demands of the fifth class against a decedent's insolvent estate, said creditors having converted their securities into cash in the interim between the allowance of the claims and the order of distribution. The court, insofar as it there explicitly ruled, applied the Maryland rule, stating: "After this application of the partial payments has been made, in accordance with a very familiar rule, the demand thus reduced is to take rank and receive its dividend arising from insufficient assets, just as any other demand of equal amount, and be entitled to a similar *pro rata* payment." The case clearly pivots on then existing statutes. [Sec. 29, p. 105, and Sec. 11, p. 109, 1 Wag. St. 1872; now Secs. 208 and 225, respectively, R. S. 1929, Mo. Stat. Ann., pp. 135, 147.] The statutory provision (Sec. 189, R. S. 1929, Mo. Stat. Ann., p. 121) applying, in effect, the bankruptcy rule to secured creditors of a decedent's estate, first appeared in the revision of 1889 (Sec. 190, R. S. 1889) and did not enter into the ruling of the McCune case. The "very familiar rule" upon which the McCune case is said to rest is not developed in the opinion. The issues here presented, issued resulting in a different holding by the United States Supreme Court and other courts, are not therein discussed. A reading of West v. Bank (1847), 19 Vt. 403, the only authority cited in the McCune case, discloses that the precise ruling of said Vermont

case does not sustain the McCune case; and, as of the date of the McCune case, the State of Vermont was committed to the chancery or equitable rule   [Walker, Smith & Co. v. Barker (1854), 26 Vt. 710, 714]. The McCune case is considered not controlling here.

The State stresses United States F. & G. Co. v. Centropolis Bank (1927), 17 Fed. (2d) 913, 915 (1, 2), 918, a case applying the chancery or equitable rule to an insolvent Missouri bank. Aside from other possible factors, the court in that case, as in the McCune case, did not have before it the issues as here presented, and we likewise consider it not controlling.

Section 11469, R. S. 1929, of Ch. 72, Art. 2, entitled ''Depositories of State Moneys,'' in so far as deemed essential, provided: ''For the security of the funds deposited by the treasurer under the provision of articles 1 and 2 of this chapter the governor, attorney-general and the treasurer shall require of said selected and approved banks or banking institutions giving security for the safe-keeping and payment of said deposits a bond equal to at least twenty-five per cent of the amount of the accepted bid or bids, to be approved by the governor and attorney-general, and in addition thereto bonds of the United States, the State of Missouri, or in their discretion, the registered bonds of the City of St. Louis . . . [et cetera] to an amount at least equal in value to the amount of the deposits with such banks or banking institutions; . . . and if in any case, or at any time, such bonds are not satisfactory security to the governor and attorney-general, for the deposits made under articles 1 and 2 of this chapter, they may require such additional security to be given as shall be satisfactory to them . . .; and in the event that such bank or banks or banking institutions of deposit shall fail to pay such deposits or any part thereof, on the check or checks of the state treasurer, then it shall be the duty of the state treasurer to forthwith convert such bonds into money and disburse the same according to law . . .'' [Consult also Sec. 11474, R. S. 1929, Mo. Stat. Ann., p. 7824.]

█ Other statutes provide that upon taking charge of an insolvent banking institution, the Commissioner of Finance shall notify all who may have claims to present and make proof of the same within four months from the date of said notice, specifying a last day for presenting such proofs [Sec. 5333, R. S. 1929, Mo. Stat. Ann., p. 7557] ; that claimants, whose claims have been duly approved by the Commissioner, ''unless such claim is entitled by law to priority of payment, shall be entitled to share ratably with other general creditors in the distribution of the assets of such corporation or private banker as such assets are disbursed pursuant to Section 5339 . . .'' [Sec. 5337, R. S. 1929, Mo. Stat. Ann., p. 7560; consult also Sec. 5339, R. S. 1929, Mo. Stat. Ann., p. 7561.] The statutory provisions of which the foregoing form a part ''provide a complete and exclusive scheme for the liquidation of insolvent banks and the distribution of their assets.''

[Commerce Trust Co. v. Farmers Exchange Bank (Banc), 332 Mo. 979, 985(3), 61 S. W. (2d) 928, 930(3).]

The Holland Bank Company, of Springfield, Missouri, failed, having on deposit to the credit of the State $1,035,656.59. The State proceeded to convert the security into cash and, after crediting the proceeds, presented, according to the record on file here, a claim for $444,552.53, which, being further reduced by proceeds from collateral, was allowed as a general claim for $353,738.41. The issue presented to the court en banc in In re Holland Bank Co. (1926), 313 Mo. 307, 281 S. W. 702, was whether this *balance*, $353,738.41, due the State was merely a general claim or entitled to priority of payment out of the free assets of said insolvent bank. While the purported ruling of the instant issue in the Holland case was *dictum*, nevertheless observations there made were essential to the precise issue there ruled and pertinent here; because in that case, as in this, the court was called upon to and did consider our statutory provisions respecting deposits of State moneys and insolvent banks. That case held, in view of the legislative history with respect to statutes governing deposits of State moneys, priority accorded the State out of assets of insolvent debtors and the failure to provide specific statutory priority for the payment of unpaid State deposits out of the assets of insolvent banking institutions, that the State had waived any claim for priority of payment under the common or statutory law, and that said claim was a general claim. The court stresses Sec. 11469, supra, points out that said section exacted a minimum of specified collateral security, aside from personal bonds, of a value at least equal to the deposit, and that the State resorts to said security "as soon as the bank fails to pay the checks of the State" [l. c. 324, 325, and 706, respectively], and says (l. c. 321 and 704, respectively):

"The history of the original act of 1879 (now Sec. 13379 [R. S. 1919—Sec. 11469, R. S. 1929]) cannot be studied without reaching the conclusion that it has been the legislative policy of this State so to safeguard the deposits of the State's money by exactions of collateral security and personal bonds of such value and in such amount as amply to protect the State against loss occasioned by failure of depositories to pay its deposits, regardless of the common-law priority attaching to claims due the State, and regardless of our statute of 1881, now Section 7212 [R. S. 1919—Sec. 3152, R. S. 1929, Mo. Stat. Ann., p. 4969], which is simply declaratory of the common-law on the subject. In other words, Article 2, Chapter 123 [Art. 2, Ch. 72, R. S. 1929], and particularly Section 13379 [Sec. 11469, R. S. 1929], comprise a complete and supposedly all-sufficient separate scheme for protecting the deposits of the State."

And (l. c. 331 and 708, respectively): "We are satisfied that the decided trend of the better-reasoned cases is to the effect that where a state has a general statute giving priority to the debts due

the state, or where the common law to the same effect is recognized, and where such state also has a depository law directing the deposit of the state's funds in selected depositories which are required to give full and adequate security equal to or in excess of such deposits as may lawfully be made therein, and where no preference over and above the protection of such security is specifically provided for in such depository law, *the state* will be deemed to have waived its priority rights under the general priority statute or the common law as the case may be, and *will be required to look to the security taken by it for the repayment of such deposits and can only come in on a parity with general creditors for a distributive share of the unpledged assets of the insolvent depository after it has exhausted the security taken by it and applied same upon its debt."* [Italics ours.]

We consider the *dictum* in the Holland case, italicized above, good law for the instant case; because: Since Sec. 11469 provides a complete and all-sufficient scheme for protecting the deposits of State moneys in banking institutions (an exaction to the detriment of and not explicitly accorded depositors in general), with directions to the state treasurer to "forthwith" convert the security upon a failure of the depository to pay on check; and since the State by exacting such security, waives its right of priority for payment of an actual balance due arising out of any insufficiency of the security; and since Sec. 5337, supra, provides that creditors of insolvent banks, unless their claims be entitled to priority, "shall be entitled to share ratably with other general creditors in the distribution" of the free assets, it would be inconsistent with said statutes, absent specific legislation contra, to hold that the legislative policy thus expressly evidenced insofar as State moneys thus protected are concerned, permits of the State sharing in such free assets on a basis of more than the actual balance due after crediting the proceeds realized from or the value of the exacted security protecting said deposits—the Commissioner of Finance's position here. Otherwise and under the chancery or equitable rule, said Sec. 11469 would not constitute an all-sufficient scheme for protecting deposits of State moneys and in given instances the the State might realize, through participation in the free assets on the basis of its claim as of the date of insolvency, the whole of its debt while unsecured depositors would be less fortunate. Under Sec. 11469 (and see Sec. 11474, R. S. 1929) the State exacts security of a value equal to its debt and is privileged, if the security thereafter be deemed unsatisfactory, to exact additional security. Secured creditors generally have to abide by their contracts, may not exact additional security and, for a variety of reasons, look to the debtor as well as the security; and we intimate no ruling with respect to issues that might arise in such cases.

The judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.